Tyrone A. McILWAIN & Valeria Y. McIlwain, Plaintiffs,

v.

PRINCE WILLIAM HOSPITAL, et al., Defendants.

Civ. A. No. 91–39–A.

United States District Court, E.D. Virginia, Alexandria Division.

Sept. 24, 1991.

Robert Huston Hovis, III, Annandale, Va., for Tyrone A. and Valeria Y. McIlwain.

Robert Harkness Herring, Jr., Office of the Atty. Gen., Richmond, Va., for Com. of Va., Dept. of Corrections.

John Allen Blazer, Crews & Hancock, Fairfax, Va., for Prince William Hosp.

John Baldwin Catlett, Jr., Sands, Anderson, Marks & Miller, Richmond, Va., for Davis Mathias, M.D.

## MEMORANDUM OPINION

ELLIS, District Judge.

### Introduction

Before the Court are motions for summary judgment raising the question whether (1) a private physician under contract with a prison and (2) a private hospital without such a contract may be held liable under § 1983 for failing to inform a prisoner-patient of his HIV infection. Because the undisputed facts of this case show that the hospital was not a state actor, and because no policy or custom of the hospital contributed to the failure to tell the prisoner of his HIV test results, the § 1983 action must be dismissed as to the hospital. The same result does not obtain with respect to the private physician, who by virtue of his contract with the prison is a "state actor" for § 1983 purposes. Moreover, summary judgment against the physician is not appropriate because the parties hotly dispute whether the physician knowingly and deliberately failed to inform the prisoner of the test results. Accordingly, plaintiff's action

against the physician survives for trial on these disputed facts.

## Facts

On September 11, 1988, plaintiff Tyrone McIlwain ("McIlwain"), a prisoner at Virginia's Haymarket Correctional Facility, lapsed into unconsciousness from an overdose of heroin and was rushed to the emergency room of defendant Prince William Hospital ("Prince William Hospital" or "the Hospital"). During his two-day stay at the Hospital, McIlwain's blood was tested without his knowledge or consent for the presence of HIV antibodies, a symptom of exposure to the virus that causes acquired immuno-deficiency syndrome ("AIDS"). On September 13th, McIlwain was sent back to prison. It appears, however, that McIlwain was then incarcerated at Virginia's Powhatan Correctional Facility and was never returned to the Haymarket facility. The treating physician on call in the Hospital's emergency room when McIlwain arrived there on September 11 received the HIV test results on September 14th and 16th. The tests were positive. McIlwain's medical chart indicates that the treating physician then forwarded the positive HIV test results to "the camp physician" and also telephoned "the camp physician" concerning the results. The "camp physician" is the physician under contract to treat prisoners. The current record suggests that defendant David Mathis was the "camp physician" at the Haymarket Correctional Facility at the time, although the record does not establish whether Mathis was the person actually contacted by the treating physician. What is undisputed is that neither Mathis nor any other prison official informed McIlwain of the positive HIV test results, nor did McIlwain receive any treatment. Subsequently, McIlwain was released from prison. He alleges that he then infected his wife with the AIDS virus.

McIlwain and his wife filed a § 1983 action against The Commonwealth of Virginia's Department of Corrections, Prince William Hospital, the emergency room treating physician, and Mathis. Count I of the complaint alleges a violation of plaintiff's civil rights stemming from the defendants' failure to inform or treat McIlwain for a medical condition known to defendants that posed imminent danger to McIlwain's life and to that of his wife. Count II alleges a pendent state law claim for medical malpractice. The Commonwealth of Virginia and the treating room physician previously were dismissed from the case.[1] Before the Court are the motions for summary judgment of the Hospital and Mathis.

## Analysis

To prevail under 42 U.S.C. § 1983, a plaintiff must satisfy two elements:

> "First, the plaintiff must prove that the defendant has deprived him of a right secured by the constitution and laws of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right under color of any statute, ordinance, regulation, custom or usage, of any State or Territory (42 U.S.C. § 1983). This second element requires that the plaintiff show that the defendant acted under color of [state] law."

*Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). Defendants move for summary judgment on the grounds that the undisputed facts show that neither the Hospital nor Mathis acted under color of state law or participated in joint activity with the state or its agents. Defendants therefore contend that the Court lacks subject matter jurisdiction. Rule 12(b)(1), Fed.R.Civ.P. Alternatively, they assert that the complaint fails to state a claim upon which relief may be granted. Rule 12(b)(6), Fed.R.Civ.P.[2] Because the

---

1. The plaintiff voluntarily dismissed the Commonwealth of Virginia, and the Court, finding that the treating physician was not a state actor for purposes of § 1983, dismissed the complaint as to him. *McIlwain v. Commonwealth of Virginia,* Civil No. 91–0039–A (E.D.Va. Mar. 22, 1991)

(order dismissing complaint as to treating physician).

2. The request for relief under Rule 12(b)(1) is erroneous in any event, and should be treated as a motion to dismiss under 12(b)(6) for failure to

parties have submitted affidavits and rely on additional materials outside the complaint, the Court treats their submissions as motions for summary judgment, Rule 56, Fed.R.Civ.P., and analyzes them accordingly. Upon reviewing the record, the Court concludes that no facts support a claim of state action by the Hospital and the Hospital is therefore entitled to judgment as a matter of law. It is otherwise, however, with defendant Mathis.

A. *The Hospital*

■ To determine whether the action of a private, regulated entity such as Prince William Hospital constitutes "state action," a court "must inquire 'whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity that the action of the latter may fairly be treated as that of the State itself.'" *Modaber v. Culpeper Memorial Hospital, Inc.,* 674 F.2d 1023, 1025 (4th Cir.1982) (quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974)). In *Modaber,* a case involving the revocation of a private physician's clinical staff privileges, the Fourth Circuit held that a state becomes responsible for the acts of a private party such as a hospital if the party "acts (1) in an exclusively state capacity, (2) for the state's direct benefit, or (3) at the state's specific behest." 674 F.2d at 1025. The Fourth Circuit held that the provision of health care did not involve the exercise of powers traditionally reserved to the state and that the state had not directed or encouraged the revocation procedures employed by the hospital. Therefore, the court found no state action.

In a case more closely analogous to the facts of the case at bar, the Supreme Court found that a private physician under contract to provide orthopedic services to inmates at a prison hospital was a state actor. *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). In *West,* the Supreme Court found that the state had a duty to provide adequate medical care to persons it had incarcerated and that this duty had been delegated to the doctor. The Court stated that "the dispositive issue concerns the relationship among the State, the physician, and the prisoner." *Id.* 108 S.Ct. at 2259. It held that:

> Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights. The State bore an affirmative obligation to provide adequate medical care to West: the State delegated that function to respondent [doctor] Atkins; and respondent voluntarily assumed that obligation by contract.

*Id.* *See also Lopez v. Dept. of Health Services,* 930 F.2d 28 (1991) (Table) (holding that allegations in a complaint that a private hospital had a contract with Arizona to provide services for indigents was sufficient to support a § 1983 action against the hospital for alleged refusal to serve an indigent).

■ The present action differs from *West v. Atkins* in that no contractual relationship existed between the Hospital and the Haymarket Correctional Facility. The prison did not routinely treat inmates at the Hospital. Rather, McIlwain was rushed to the Hospital because he needed emergency care. A hospital's mere acceptance of a prison inmate for emergency care does not transform the hospital into a state actor. By seeking emergency treatment for McIlwain, the prison did not delegate its duty to provide him with medical care; the Hospital, in admitting McIlwain to its emergency room, did not accept any such duty. The Hospital was not "fully vested with state authority ... to provide essential medical care to those the State had

state a claim. *See Carter v. Norfolk Community Hospital Association, Inc.,* 761 F.2d 970, 974 (4th Cir.1985) (holding that district court should have construed hospital's motion to dismiss under Rule 12(b)(1) as a motion to dismiss under 12(b)(6)); *York v. Story,* 324 F.2d 450 (9th Cir.

1963) (complaint that alleges jurisdiction under 28 U.S.C. §§ 1343(3) and (4) establishes district court's jurisdiction whether or not plaintiff succeeds in stating such a claim); *Dennis v. Hein,* 413 F.Supp. 1137, 1139 (D.S.C.1976) (same).

incarcerated." *West v. Atkins*, 108 S.Ct. at 2260. In short, the Hospital was not a state actor.

■ Moreover, even assuming that the mere acceptance of a prisoner in its emergency room was sufficient to render Prince William Hospital a "state actor" for purposes of § 1983, the Hospital cannot be held liable for "the actions of its employees unless plaintiff[s] can show a policy which the employees were carrying out in their alleged denial of treatment." *Mitchell v. Chontos*, 756 F.Supp. 243, 249 n. 9 (D.S.C.1990) (citing *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). In *Monell*, the Supreme Court held that vicarious liability may not be imposed on a municipality under § 1983. *Id.* at 691–92, 98 S.Ct. at 2036. The Supreme Court did not address directly whether a private corporate employer may be held liable under § 1983 on a *respondeat superior* theory. But numerous lower courts, including the Fourth Circuit, have understandably relied on *Monell* in holding that a corporate employer may not be made vicariously liable under § 1983. *See Iskander v. Village of Forest Park*, 690 F.2d 126, 130 (7th Cir.1982) (private store not vicariously liable under § 1983 for acts of its employees); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir.1982) (same); *Draeger v. Grand Central, Inc.*, 504 F.2d 142, 145–46 (10th Cir.1974) (same); *Estate of Iodice v. Gimbels, Inc.*, 416 F.Supp. 1054, 1055 (E.D.N.Y.1976) (same). Nor is there any doubt that this sensible principle applies where, as here, the corporate employer is a hospital. *See Temple v. Albert*, 719 F.Supp. 265, 268 (S.D.N.Y.1989) (private hospital not vicariously liable under § 1983 for acts of its employees); *Mitchell*, 756 F.Supp. at 249 n. 9 (same). The record at bar shows that no actions by "employees" of the Hospital are alleged to have violated plaintiff's rights. Defendant Mathis is associated by contract with the Haymarket Correctional Facility, not with Prince William Hospital; the physicians who treated McIlwain at the Hospital were private contractors, not employees of the Hospital. Even putting this aside, however, the factual record shows that the Hospital had no policy requiring the testing of patients for AIDS, and there is no evidence that the Hospital discouraged or precluded the reporting of HIV test results to patients.[3] Finally, the record before the Court indicates that the treating physician at the Hospital reported the test results to the Haymarket Correctional Facility's doctor. In sum, even assuming that Prince William Hospital were a "state actor" and that its employees withheld from a patient his HIV test results, the Hospital would incur no § 1983 liability for those acts absent evidence of a custom or policy to test all patients for AIDS or to withhold HIV test results from patients. No such evidence has been shown to exist.

## B. *The Physician*

■ In *West v. Atkins*, the Supreme Court held that a doctor who contracts to provide medical services to inmates on a part-time or full-time basis acts under color of state law when providing treatment. 108 S.Ct. at 2259. The undisputed facts are that defendant Mathis has been employed since 1981 on a part-time contract basis to provide medical services to inmates at the Haymarket facility. Mathis saw McIlwain on August 18, 22, and 31, 1988, for needs unrelated to McIlwain's subsequent heroin overdose. Mathis has averred that he did not treat McIlwain after August 31 and did not order that blood work or HIV testing be conducted on him. Mathis contends that while he may be a state actor by virtue of his contract with the Haymarket facility, *see West*, 108 S.Ct. 2250, he did not treat McIlwain during or after his hospitalization and hence could not have been deliberately indifferent to McIlwain's medical needs.[4]

---

3. The affidavit of the Hospital's Director of Infectious Disease Control avers that at the time of plaintiff's admission, the decision whether to request an HIV test lay with the consulting or attending physician, exercising his or her individual medical judgment.

4. Mathis also contends that plaintiffs fail to allege in their complaint deliberate indifference

■ Based on his contractual relationship with the Haymarket Facility, Mathis "must be considered to be a state actor." *West v. Atkins,* 108 S.Ct. at 2260. While Mathis contends that he did not treat McIlwain after August 31, 1988, he does not indicate whether he learned of McIlwain's positive HIV test results. Moreover, evidence in the record suggests that either Mathis or another prison doctor was informed of McIlwain's condition.[5] Thus, disputed issues of fact remain concerning whether Mathis knew about McIlwain's HIV status and whether he failed to inform McIlwain of it. As the knowing failure to inform a prison patient that he has been exposed to the AIDS virus constitutes "deliberate indifference to serious medical needs of prisoners," *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) the § 1983 action should not be dismissed as to Mathis. Of course, further proceedings in this matter may reveal that Mathis had no knowledge of the test results; at this point, however, the current record is unclear and disputed.[6]

to a serious medical need as required by *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). This claim lacks merit. Plaintiffs allege that defendant Mathis, along with the other defendants, failed "to inform plaintiffs of medical conditions within their knowledge which posed imminent danger to the life of an inmate and his wife" and that the "denial of any treatment for Tyrone McIlwain evidences conscious disregard for the safety and well-being of inmates who are incarcerated."

5. The Hospital, as part of its motion for summary judgment, submitted the affidavit of its Director of Infectious Disease Control, who avers that plaintiff's medical chart bears the notation "report on HIV antibodies forwarded to camp physician by mail and called by phone."

6. Mathis also contends that plaintiff Valeria McIlwain, the wife of plaintiff McIlwain, has failed to state a claim against him. Mathis contends that because Valeria was never his patient and because he was under no state legal obligation to inform Valeria of Tyrone McIlwain's test results, Mathis owed no duty to her. The complaint alleges that Mathis denied both Tyrone and Valeria McIlwain their Fourteenth Amendment right "to be secure in their persons." Because this issue has not been adequately briefed by the parties, and because it appears that Valeria McIlwain may not now desire to pursue her claim, the Court declines to reach this issue. Should this claim be pursued, the parties will be required to brief the novel question whether, when prison officials fail to inform an inmate that he or she has been exposed to the AIDS virus and that inmate subsequently infects their spouse, the spouse has a cause of action under § 1983. A few observations on the issue may aid the parties should this claim be pursued.

Valeria McIlwain, like all persons who claim a deprivation of constitutional rights, is required to prove some violation of her personal rights. *See Coon v. Ledbetter,* 780 F.2d 1158, 1160 (5th Cir.1986) (wife had no standing to maintain action arising from husband's and daughter's exposures to excessive force during arrest); *Dohaish v. Tooley,* 670 F.2d 934 (10th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982) (right to bring action under civil rights act is personal in nature and does not accrue to a relative); *English v. Powell,* 592 F.2d 727 (4th Cir.1979) (wife had no standing to maintain action arising from husband's job demotion).

Here, Valeria McIlwain alleges a violation of her personal Fourteenth Amendment right to be secure in her person. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." This clause protects persons against "unjustified intrusions on personal security." *Ingraham v. Wright,* 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977) (holding that corporal punishment in public schools implicates Fourteenth Amendment, but that traditional common law remedies provide adequate due process). The Supreme Court has held that normally the state has no duty to protect a person against harm inflicted on them by a third-party. *See DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (holding that the state had no obligation to protect a child from its father's physical abuse, even where state officials' knew of the danger). However, this holding was qualified by the Supreme Court's finding that:

While the State may have been aware of the dangers that [plaintiff] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them.

109 S.Ct. at 1006. In the instant case, state actions arguably created the danger Valeria McIlwain faced of being exposed to the AIDS virus without her husband's or her own knowledge.

The parties will need to address these issues and also the issue of what specific mental state with regard to Valeria McIlwain, if any, a state actor would be required to have before a cause of action under § 1983 would arise. *Compare Trujillo v. Bd. of City Commissioners, County of Santa Fe,* 768 F.2d 1186, 1190 (10th Cir.1985)

## CONCLUSION

There being no evidence in the record from which to find that defendant Prince William Hospital is a state actor, and no evidence that a policy or custom of the Hospital led to the failure to tell plaintiffs of Tyrone McIlwain's HIV test results, plaintiff's § 1983 claims against the Hospital are dismissed with prejudice, and plaintiff's pendent state claims against the Hospital are dismissed without prejudice. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Because the contract between defendant Mathis and Virginia's Haymarket Correctional Facility renders Mathis a state actor, and because the record is unclear whether Mathis learned of McIlwain's HIV test results and failed to inform McIlwain of those results, Mathis' motion for summary judgment should be denied.

An appropriate order has been entered.

(holding that mother and sister had constitutionally protected interest in relationship with son and brother who died in jail, but adding that allegation of specific intent to interfere with that relationship was required to state a claim under § 1983) *with Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir.1984) (not imposing a state of mind requirement in finding a deprivation of intimate associational rights). *See also Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (due process clause not implicated by a state official's negligent act causing unintended loss of life, liberty, or property).