# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

INVENTION SUBMISSION CORPORATION,
a Pennsylvania corporation,
*Plaintiff-Appellant,*

v.

JONATHAN W. DUDAS, Under
Secretary of Commerce for
Intellectual Property and Director,
United States Patent and Trademark
Office, U.S. Department of
Commerce, in his official capacity,
*Defendant-Appellee.*

No. 04-2295

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-02-1038-1)

Argued: May 24, 2005

Decided: June 24, 2005

Before WILKINS, Chief Judge, and NIEMEYER
and SHEDD, Circuit Judges.

---

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Chief Judge Wilkins and Judge Shedd joined.

---

## COUNSEL

**ARGUED:** Edward B. Friedman, Pittsburgh, Pennsylvania, for
Appellant. Rachel Celia Ballow, Assistant United States Attorney,

OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** J. Stephen Purcupile, FRIEDMAN & FRIEDMAN, Pittsburgh, Pennsylvania; Richard C. Sullivan, REED SMITH, L.L.P., Falls Church, Virginia, for Appellant. Paul J. McNulty, United States Attorney, Alexandria, Virginia, for Appellee.

## OPINION

NIEMEYER, Circuit Judge:

In our earlier review of the district court's final order dismissing this case under Federal Rule of Civil Procedure 12(b)(6), we held:

> Because the conduct of the [Patent and Trademark Office] that is the subject of this action did not constitute "final agency action" as used under the [Administrative Procedure Act], the district court did not have subject matter jurisdiction to evaluate the complaint under Rule 12(b)(6) and should have dismissed this case under Rule 12(b)(1). We therefore vacate its order of October 30, 2002, as well as the supporting opinion, and remand with instructions to dismiss this case under Federal Rule of Civil Procedure 12(b)(1).

*Invention Submission Corp. v. Rogan*, 357 F.3d 452, 460 (4th Cir. 2004). By order dated May 5, 2004, the district court did vacate its earlier dismissal order and dismissed this case under Federal Rule of Civil Procedure 12(b)(1).

Invention Submission Corporation filed a motion to vacate the district court's May 5, 2004 order and to grant Invention Submission leave to file an amended complaint for the purpose of avoiding the jurisdictional issue. The district court denied this motion and reaffirmed its earlier dismissal order. Invention Submission now challenges the district court's order denying its motion to vacate and for leave to amend.

Because the district court was bound by the mandate of this court to dismiss this case for lack of subject matter jurisdiction, we affirm.

I

In January 2002, the Patent and Trademark Office ("PTO") launched a media campaign to counter invention promotion scams. The print advertisements featured an inventor named Edward Lewis, along with text that identified him by name and read, "I spent $13,000 and three years 'spinning my wheels' with a company that promised my idea would make lots of money. They were right. It made lots of money . . . *for them*. I haven't seen a penny." The advertisement ended with a general statement about avoiding "invention promotion scams" and contact information for the PTO.

A journalist for a cable television network, who saw the PTO's advertisements, interviewed Lewis and published a story revealing that Lewis was referring in the advertisements to his relationship with Invention Submission, a business engaged in assisting inventors with obtaining patents. The article revealed that Lewis had filed a complaint with the PTO in August 2001 that was "being processed." The article also revealed that Invention Submission was one of several companies investigated by the FTC in the 1990s "for misrepresentation in patent marketing schemes." The article concluded with Invention Submission's response that it did nothing wrong and that its representations and commercials misled neither Lewis nor anyone else.

After the article appeared, Invention Submission commenced this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 704, against the PTO, alleging that the PTO's advertising campaign was aimed at Invention Submission to penalize it and ultimately to put it out of business. Invention Submission claimed that the campaign was an illegal final agency action that was arbitrary and capricious and exceeded any statutory authority conferred on the PTO.

The PTO filed a motion to dismiss Invention Submission's complaint under Federal Rule of Civil Procedure 12(b)(1), contending that the PTO advertising campaign was not a "final agency action" and therefore that the district court lacked subject matter jurisdiction to review its actions. The district court granted the motion to dismiss but based its decision on Rule 12(b)(6), finding that "it is clear as a matter of law that no relief could be granted under any set of facts that could

be proved consistent with the allegations." The court observed that "[t]he PTO's publications in this case were merely generic advertisements of agency programs not specifically naming the plaintiff. Any harm to the plaintiff was, at most, indirect." Finally, the court found that the agency's conduct was not a "final agency action" and that Invention Submission had not alleged any specific harm caused by the PTO's actions.

On Invention Submission's first appeal, we agreed with the district court that the PTO's alleged conduct did not constitute final agency action and therefore was not reviewable under the APA. We observed:

> The text of the advertising material can only be construed to be an effort by the PTO to inform inventors of the perils and potential scams that they might encounter during the patent process. Such advertising did not create "legal consequences" for Invention Submission or any other member of the public cognizable *as final agency action*, and the campaign itself did not determine any right or obligation of any party.

*Invention Submission*, 357 F.3d at 460 (emphasis added). In response to Invention Submission's contention that in conducting the advertising campaign, the PTO harbored an intent to put Invention Submission out of business and that therefore the advertising campaign was agency action adversely affecting Invention Submission, we stated:

> Such underlying intent of agency officials, however, does not convert the PTO's legal advertising material warning generally of invention promotion scams — the purpose for which Congress enacted the Inventors' Rights Act — into a PTO sanction imposed on Invention Submission that would be reviewable in court, especially when the material itself does not reference an intent to penalize any particular company.

*Id.* Focusing particularly on the effect of the advertising campaign on Invention Submission, we observed:

If the PTO's advertising made business more difficult for Invention Submission by raising the public's awareness, the decisions of members of the public are attributable to independent responses and choices of third parties and cannot be imputed to the PTO for purposes of determining whether its conduct was a final agency action.

*Id.* (internal quotation marks and citation omitted). We summarized our holding as follows:

In short, the PTO's advertising campaign warning the public about invention promotion scams was consistent with the PTO's commission granted by the Inventors' Rights Act of 1999, and in the circumstances of this case, the decision to pursue such a campaign, as well as its content, *did not create a final agency action that is reviewable in court.*

*Id.* (emphasis added). Accordingly, we concluded that the district court did not have subject matter jurisdiction over the case and remanded it "with instructions to dismiss this case under Federal Rule of Civil Procedure 12(b)(1)." *Id.*

During the course of its prior appellate briefing, Invention Submission argued that the district court's jurisdiction over its complaint could have rested on general equity jurisdiction under the holding of *American School of Magnetic Healing v. McAnnulty*, 187 U.S. 94 (1902), an argument that it raised for the first time on appeal. In response, we stated, "we do not address whether the '*McAnnulty* Doctrine,' which Invention Submission raises for the first time on appeal, provides a basis for judicial review of unlawful agency action." *Invention Submission*, 357 F.3d at 457 n.*.

After the case was remanded to the district court and the district court had dismissed the case under Rule 12(b)(1), Invention Submission filed a motion to vacate the dismissal order and for leave to amend its complaint to allege jurisdiction under the *McAnnulty* doctrine. The district court, relying on the scope of our mandate on remand, denied Invention Submission's motion and reaffirmed its dismissal under Rule 12(b)(1). In addition, the court observed that to

reopen the case at that point in time "would defeat notions of judicial economy and finality."

Invention Submission now appeals the district court's order denying its motion to vacate and for leave to amend its complaint.

## II

In challenging the district court's reliance on the plain language of our mandate on remand, Invention Submission contends that on remand, the district court was "free to pass upon any issue which was not expressly or impliedly disposed of on appeal so long as consideration of the issue raised on remand is not inconsistent with the appellate mandate." Invention Submission argues that it would not have been inconsistent with our mandate to permit it to amend its complaint to rest jurisdiction on the *McAnnulty* doctrine. It relies heavily on our statement made in the opinion on the first appeal that Invention Submission "relied exclusively on the APA" to establish subject matter jurisdiction, an issue that we disposed of on that appeal, and our observation that "we do not address whether the '*McAnnulty* Doctrine' . . . provides a basis for judicial review of unlawful agency action." *Invention Submission*, 357 F.3d at 457 n.*.

The force of our prior mandate is governed by well-established principles. In general, once a case has been decided on appeal and a mandate issued, the lower court may not deviate from that mandate but is required to give full effect to its execution. *See Stamper v. Baskerville*, 724 F.2d 1106, 1107 (4th Cir. 1984). This "mandate rule" is a more powerful version of the law of the case doctrine and is based on "the principle that an inferior tribunal is bound to honor the mandate of a superior court within a single judicial system." 18B Charles Alan Wright, Arthur B. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 4478.3 (2d. ed. 2002). As we observed in *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (quoting *Sprague v. Ticonic National Bank*, 307 U.S. 161, 168 (1939)), "[f]ew legal precepts are as firmly established as the doctrine that the mandate of a higher court is 'controlling as to matters within its compass.'" Under the mandate rule, therefore, a lower court generally may not consider questions that the mandate has laid to rest. *Sprague*, 307 U.S. at 168.

Deviation from the mandate rule is permitted only in a few exceptional circumstances, which include (1) when "controlling legal authority has changed dramatically"; (2) when "significant new evidence, not earlier obtainable in the exercise of due diligence, has come to light"; and (3) when "a blatant error in the prior decision will, if uncorrected, result in a serious injustice." *United States v. Aramony*, 166 F.3d 655, 662 (4th Cir. 1999) (quoting *Bell*, 5 F.3d at 67) (internal quotation marks omitted). But it is clear that none of these exceptions applies here. Our review, therefore, is limited to consideration of the scope of our mandate and a determination of whether the district court faithfully executed it in dismissing this case without permitting Invention Submission leave to file an amended complaint.

The language of our mandate directed the district court to dismiss this case for lack of subject matter jurisdiction and, on its face, does not authorize the district court to open the case for further adjudication. Because our order stated that the district court lacked jurisdiction, the court was not free to do anything else but to dismiss the case. As we have explained previously, "[c]ompliance with an order to relinquish jurisdiction necessarily precludes the lower court from taking any further action other than dismissal, for to do so would involve retaining jurisdiction." *Baskerville*, 724 F.2d at 1108. Thus, to comply with our mandate, the district court could only dismiss the case. "[A]ny action by the lower court other than immediate and complete dismissal [would have been] by definition inconsistent with — and therefore a violation of — the order [to dismiss]." *Id.* In short, our instruction to the district court was clear, direct, and limiting, and we conclude that the district court followed the mandate as directed. Thus, in restricting its action to that directed by the mandate, the district court did not err.

Invention Submission's reliance on our previous opinion's footnote, 357 F.3d at 457 n.*, is misplaced. In limiting our discussion to whether the district court had jurisdiction under the APA, as invoked by Invention Submission, we simply took note that Invention Submission had not properly raised the *McAnnulty* doctrine as a jurisdictional basis before the district court and therefore had not preserved that issue for consideration on appeal. While we noted this fact in the footnote, we did not instruct the district court to consider that doctrine on remand. Had the district court done so anyway, it would have had to

violate what we did instruct: to dismiss the case for lack of subject matter jurisdiction.

Because the district court was bound by the mandate of this court to dismiss this case for lack of subject matter jurisdiction, and the district court did dismiss this case, we conclude that there is no basis to reverse its order.

*AFFIRMED*