**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 24-1008**

---

R.A., Individually, and as lawful guardian ad litem of Minor Child G.A.,

       Plaintiff – Appellee,

v.

RHONDA MCCLENAHAN; ALISHA CLOER; ALVERA LESANE,

       Defendants – Appellants,

and

BRADY JOHNSON; IREDELL-STATESVILLE BOARD OF EDUCATION; ANDREW MEHALL; ROBIN JOHNSON,

       Defendants.

---

**No. 24-1009**

---

R.A., Individually, and as lawful guardian ad litem of Minor Child G.A.,

       Plaintiff – Appellee,

v.

BRADY JOHNSON,

       Defendant – Appellant,

and

ALISHA CLOER; ALVERA LESANE; IREDELL-STATESVILLE BOARD OF EDUCATION; RHONDA MCCLENAHAN; ANDREW MEHALL; ROBIN JOHNSON,

          Defendants.

---

Appeals from the United States District Court for the Western District of North Carolina, at Statesville.  Kenneth D. Bell, District Judge.  (5:20−cv−00192−KDB−SCR)

---

Argued:  October 31, 2024                    Decided:  December 3, 2024

---

Before WILKINSON, KING, and THACKER, Circuit Judges.

---

Reversed by published opinion. Judge Wilkinson wrote the opinion, in which Judge King and Judge Thacker joined.

---

**ARGUED:**  Sullivan Collins Saint, BROOKS PIERCE, Greensboro, North Carolina, for Appellants.  Stacey Marlise Gahagan, GAHAGAN PARADIS, PLLC, Durham, North Carolina, for Appellees. **ON BRIEF:**  Erin M. Barker, Greensboro, North Carolina, Gary S. Parsons, BROOKS PIERCE, Raleigh, North Carolina, for Appellant Brady Johnson. Steven A. Bader, RaShawnda M. Williams, CRANFILL SUMNER, LLP, Raleigh, North Carolina, for Appellants Rhonda McClenahan, Alisha Cloer, and Alvera Lesane.

---

2

WILKINSON, Circuit Judge:

We deal here with the unfortunate instance of a district court failing to follow our clear mandate to dismiss the state law claims against the school officials in this case. We again reverse the judgment and reiterate what we said in the prior appeal—that the state law claims were not remanded for further proceedings but were instead to be dismissed. No exceptions to the mandate rule applied, and their invocation here would risk allowing the exceptions to swallow the rule.

## I.

This lawsuit began in February 2021 when appellee R.A. brought suit against her son G.A.'s special education teacher Robin Johnson and several school officials for Ms. Johnson's mistreatment of G.A. during the first and second grades. The complaint alleged that Ms. Johnson repeatedly subjected G.A. to physical and emotional abuse and that the school officials knew of the abuse but negligently failed to intervene. The school officials moved to dismiss the negligence counts against them, claiming that they were "barred by public official immunity and should be dismissed with prejudice." J.A. 158. The district court denied the motion and the school officials filed a timely interlocutory appeal.* *See Bailey v. Kennedy*, 349 F.3d 731, 738–39 (4th Cir. 2003) (denial of official immunity under North Carolina law is immediately appealable).

---

* The complaint also included federal constitutional and statutory claims. The district court granted the school officials' motion to dismiss the federal claims against them. That dismissal has not been appealed.

3

On appeal, we agreed with the school officials and held that "their immunity requires that the state law claims against them be dismissed." *R.A. v. Johnson*, 36 F.4th 537, 540 (4th Cir. 2022). Our opinion began by explaining that the school officials were "presumptively entitled to public official immunity for their exercise of discretion in overseeing their school district." *Id.* at 541. We then rejected the contention that the immunity was pierced because the school officials acted with malice, an exception to official immunity under North Carolina law. Our analysis focused on North Carolina cases establishing that an official acts with malice only when he "intends to be prejudicial or injurious to another." *Id.* at 545 (quoting *Grad v. Kaasa*, 312 N.C. 310, 313 (1984)). This high bar for liability, we explained, "serves to stem the tide of litigation" that would ensue if public officers "were constantly exposed to the threat of personal liability" for discretionary decisions. *Id.* at 542. Applying this standard, we thought that the school officials' failure to "investigate and report Ms. Johnson's behavior" showed at most that they were "recklessly indifferent" to the situation, not that they "maliciously intended to cause G.A. harm such that the immunity [was] pierced." *Id.* at 546. We concluded that the "state law claims against appellants must thus be dismissed, and the district court's decision to the contrary is reversed." *Id.*

The district court, however, did not dismiss the claims but allowed them to proceed. It granted R.A. leave to file an amended complaint reasserting the very same claims against the school officials that we dismissed, this time with additional "details" based on "new evidence" obtained from police records. J.A. 534–35 (motion to file amended complaint). The new details primarily consisted of allegations that the school officials received

4

complaints from several parents about Ms. Johnson abusing their children. The school officials again moved to dismiss. They argued that our mandate required dismissal and that the amended complaint still failed to pierce the immunity.

The district court denied the motion to dismiss. It thought its failure to dismiss was harmless because it construed our mandate to leave it "the discretion to dismiss the claims with or without prejudice." J.A. 990 (order denying motion to dismiss). In support of this interpretation, the court cited a sentence in a footnote from a concurring opinion suggesting that "on remand the district court should consider rendering the dismissal of these negligence claims as without prejudice to allow R.A. a chance to amend her complaint." *Johnson*, 36 F.4th at 547 n.1 (Motz, J., concurring in the judgment). Turning to the merits, the district court thought that the immunity was pierced because the history of complaints against Ms. Johnson plausibly suggested that the school officials acted with a malicious intent to injure G.A.

The school officials timely appealed on both issues. Because we hold that our mandate required dismissal with prejudice, we do not reconsider the immunity issue on the merits.

## II.

In our hierarchical judicial system, it is "axiomatic" that our decisions "bind the district courts just as decisions of the Supreme Court bind" us. *Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007). Hierarchical systems, with their respect for entry-level resolution succeeded by review, exist to deflect the perception that justice is definitively dispensed by a single hand.

5

A corollary of this principle is the mandate rule, which requires district courts to "implement both the letter and spirit" of our mandate after we decide a case on appeal. *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993). This rule rests not on the belief that "appellate courts are somehow superior or always correct," but rather on the need to protect the "essential nature of an appeal" and ensure "finality in litigation." *Doe*, 511 F.3d at 465.

A.

With this principle in mind, we first address whether the district court violated our mandate. There is no question that it did. At the end of our opinion we instructed the district court that the school officials were "entitled to immunity" and that the "state law claims against [them] must thus be dismissed." *Johnson*, 36 F.4th at 546. Despite this conclusion, the district court did not dismiss the claims as instructed but allowed them to continue. This was impermissible. When we order dismissal, the district court is "not free to do anything else but to dismiss." *Invention Submission Corp. v. Dudas*, 413 F.3d 411, 415 (4th Cir. 2005).

Notwithstanding these instructions, the district court took the view that our mandate left it the discretion to grant a dismissal without prejudice, meaning that R.A. would have been free to refile the claims even if they had been dismissed. This reading of our mandate was at odds with basic principles of civil procedure. The dismissal was not for some "defect in subject matter jurisdiction," which is routinely dismissed "without prejudice." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013). It was for failure to state a claim on which relief can be granted, and it is well established that a dismissal "for failure to state a claim is with prejudice unless

6

the court specifically orders dismissal without prejudice." *Ostrzenski v. Seigel*, 177 F.3d 245, 248 (4th Cir. 1999).

The source of this rule lies in Federal Rule of Civil Procedure 41(b), which says that a dismissal, "except one for lack of jurisdiction, improper venue, or failure to join a party," is "an adjudication on the merits" unless the court "states otherwise." Fed. R. Civ. P. 41(b). The phrase "adjudication on the merits" in this context simply means "with prejudice." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001). Rule 41(b) therefore sets up a "default rule": a dismissal is with prejudice unless (1) it is for one of the excepted grounds or (2) the court "states otherwise." *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204 (4th Cir. 2006) (quoting *Semtek Int'l*, 531 U.S. at 503).

Neither qualification applies here. Start with the proviso for dismissals predicated on "lack of jurisdiction, improper venue, or failure to join a party." Fed. R. Civ. P. 41(b). In *Costello v. United States*, 365 U.S. 265, 287 (1961), the Supreme Court read this exception to encompass any dismissal based on some "initial bar" to the court reaching the merits. As we mentioned earlier, our prior decision did not involve an "initial bar" to the merits. It held that R.A. "failed to state a claim" because the school officials were "entitled to immunity under North Carolina law" and it could not be shown that "the officials maliciously intended to cause G.A. harm such that the immunity [was] pierced." *Johnson*, 36 F.4th at 544, 546. Our ruling was thus plainly on the merits.

The district court, however, concluded otherwise. It found it significant that we held that "R.A. had not sufficiently *alleged* malice, rather than that no set of facts existed to support [her] claim." J.A. 990 (district court order) (emphasis added). We think the

7

distinction is without a difference. Semantics aside, our holding was that "the allegations in the complaint d[id] not state a ground for relief" under North Carolina law, and it is "well settled" that a dismissal on such grounds is one "on the merits." *Bell v. Hood*, 327 U.S. 678, 682 (1946); *see also Brownback v. King*, 592 U.S. 209, 216–17 (2021) ("'If the judgment determines that the plaintiff has no cause of action' based 'on rules of substantive law,' then 'it is on the merits.'" (quoting Restatement (First) of Judgments § 49, cmt. A (Am. Law. Inst. 1942))).

Having concluded that Rule 41(b)'s exception clause is inapplicable, the remaining question is whether our opinion modified the presumption of prejudice by "stat[ing] otherwise." It assuredly did not. Again, we held that the officials were "entitled to immunity" and that the "state law claims against [them] must thus be dismissed." *Johnson*, 36 F.4th at 546. We did not remand for further proceedings or leave the district court the option to dismiss without prejudice. *Cf. Carter v. Norfolk Cmty. Hosp. Ass'n, Inc.*, 761 F.2d 970, 974–75 (4th Cir. 1985) ("[W]e remand for [the district court's] decision whether to dismiss with or without prejudice").

In fact, we made it unmistakably clear that these claims were not to be reasserted. Our opinion began by emphasizing that public official immunity is "an immunity from suit, not merely from liability," and that an official's immunity is "effectively lost" if the suit is allowed to proceed. *Johnson*, 36 F.4th at 541. We later reiterated this concern, warning that litigation "exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government." *Id.* at 545 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009)). For these

8

reasons, we expressly instructed the district court that "the suit cannot be allowed to move forward to exact such costs" against the school officials. *Id.*

Despite this directive, the district court inferred our permission to dismiss without prejudice from a sentence in a concurring opinion raising it as a possibility. We must reject this approach. Separate opinions undoubtedly serve valuable purposes, both as a source of insight in the present and as a voice of persuasion in the future. Within the confines of the case, however, it is the majority opinion that binds the district court, and, further, applies precedentially. And as we have explained, the plain import of the majority opinion required the court to dismiss the claims with prejudice.

### B.

The final question we must address is whether the district court's departure from our mandate was justified by "extraordinary circumstances." *Bell*, F.3d at 67. R.A. contends that her discovery of prior parental reports against Ms. Johnson constitutes "significant new evidence, not earlier obtainable in the exercise of due diligence." *Id.* To begin with, the district court neither invoked this exception nor made findings on the novelty, significance, or prior unavailability of the evidence. In any case, we think this evidence falls well below the threshold for the kind of new evidence that would warrant setting aside our mandate.

For one, the evidence is not "new." While R.A. may have discovered the additional reports against Ms. Johnson recently, the basic thrust of the evidence is more of the same. R.A.'s original complaint already alleged that the school officials were well aware of Ms.

9

Johnson's abusive behavior. That the officials may have had even more knowledge of her misconduct is, for purposes of the mandate rule, cumulative and unrevelatory.

For a similar reason, the evidence cannot be considered "significant." At bottom, R.A.'s amended complaint forwards the same legal theory as the first—that the school officials acted with malice by failing to investigate and report Ms. Johnson despite their knowledge of her abusive behavior. While evidence of additional parent reports might strengthen this argument on the margins, it does not materially alter the nature of the case. *See Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 408 (7th Cir. 2018) (declining to apply new evidence exception for similar reason). We have already rejected R.A.'s failure-to-intervene theory and we decline to address it again on slightly different facts.

The mandate-rule exceptions are meant to account for truly "extraordinary circumstances," not to provide a second bite at the apple. The "new evidence" proffered here is nothing more than redundant details dressed up as a smoking gun. If the exception applied this broadly it would invite abuse by enabling parties to evade unfavorable mandates simply by tacking on incremental allegations after losing an appeal. Such a result would let the exception overrun the rule and reduce appellate mandates to empty formalities.

### III.

This appeal provides a perfect illustration of the mandate rule's virtues and the chaos that ensues when it is undermined. The appellees' briefing attempted to drag us back into the merits of the exact claim that was fully briefed and decided in the first appeal. This disregard for finality burdened the parties and the court with the time and expense of an

10

unnecessary appeal, to the detriment of other litigants awaiting their first opportunity for review.

The hierarchical structure of the judiciary may sometimes cause courts to chafe at a reversal, but one need not long contemplate the deleterious consequences that would follow if mandates from higher authorities were routinely disregarded. Appellate caseloads are rising, and one of the prime causes is that "a case in the district court is more likely than it once was to produce two or more appeals, rather than just one." RICHARD A. POSNER, THE FEDERAL COURTS 118 (rev. ed. 2009). Our system would simply be "overrun if an indefinite number of appeals were possible in a single lawsuit." *Id.* at 338. The result would be a slower and costlier legal system that leaves litigants mired in uncertainty and delay.

The decisions of the circuit courts of appeals are certainly not beyond criticism. The wisdom of any judicial ruling is of course always open to debate. But when a litigant is dissatisfied with the decision of a circuit court, it should file a petition for rehearing or seek certiorari at the Supreme Court. What it should not do is return to the trial court and ask it to undo the appellate court's decision.

IV.

In sum, the "state law claims against appellants must thus be dismissed, and the district court's decision to the contrary is reversed." *Johnson*, 36 F.4th at 546. We meant what we said the first time.

*REVERSED*

11