**Glen Henry CALVERT, Plaintiff,**

**v.**

**Nicholas HUN, Commissioner; William C. Duncil, Warden; Ronald D. Walton, Executive Director; Roy E. White, Administrator; Earnest Neve Hart, Jr., M.D.; Kenneth D'Amato, M.D.; Douglas Hibbs, Therapist; William R. Whyte, Deputy Commissioner; and Manfred G. Holland, Defendants.**

**Civ. A. No. 92–0048–E.**

United States District Court,
N.D. West Virginia.

July 15, 1992.

**1228**

Glen Henry Calvert, pro se.

George P. Stanton, Atty. Gen., Charleston, W.Va., for defendants.

## ORDER

MAXWELL, Chief Judge.

Plaintiff, a state prisoner proceeding *pro se*, filed the above-styled civil action on April 14, 1992 alleging violations of 42 U.S.C. § 1983 arising from medical treatment furnished by Defendants. A review of the record in this matter demonstrates that all Defendants have filed answers with the Court. All Defendants except Defendants Hibbs and D'Amato have filed dispositive motions with the Court. Plaintiff has twice been advised of his right to respond to all matters of record, including the dispositive motions. A review of the record in this action demonstrates that the dispositive motions are ready for consideration by the Court.

The facts applicable to these motions may be briefly summarized. Plaintiff has an artificial right knee which has apparently been giving him trouble since before the beginning of his present term of incarceration. Plaintiff claims, without submitting any documents in support of his contentions, that various physicians have recommended that the knee be replaced. Medical personnel in the Division of Corrections, as well as outside specialists, have concluded that physical therapy is a viable alternative course of treatment. Plaintiff claims that Defendants' actions have not improved his medical problems, and may in fact have exacerbated his ailments. Plaintiff instituted the above-styled action seeking compensatory relief as well as declaratory relief compelling Defendants to provide Plaintiff with a knee replacement operation.

Due to the consideration of all matters of record in this action, the Court will analyze Defendants' dispositive motions under the standard for summary judgment. Motions for summary judgment under Rule 56, Federal Rules of Civil Procedure, impose a difficult standard on the movant, for it must be obvious that no rational trier of fact could find for the nonmoving party. *Miller v. FDIC*, 906 F.2d 972, 974 (4th Cir.1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). To withstand such a motion, the nonmoving party must offer evidence from which "a fair-minded jury could return a verdict for the [party]." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that the facts might affect the outcome of the suit under applicable law, as well as genuine, meaning that they create fair doubt rather than encourage mere speculation. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985).

### I

Before addressing the outstanding dispositive motions, the Court first examines Plaintiff's pleadings regarding Defendant Hibbs, the physical therapist to whom Plaintiff was referred for treatment. Plaintiff alleges that Defendant Hibbs improperly conducted the therapy, thereby exacerbating his pre-existing medical condition. In his Answer, Defendant Hibbs generally contests Plaintiff's allegations.

An examination of all matters of record concerning Defendant Hibbs demonstrates that Plaintiff's allegations regarding Hibbs are legally frivolous within the meaning of 28 U.S.C. § 1915(d). It is clear that Defendant Hibbs is not an employee of

the State of West Virginia or the Division of Corrections. He is a private physical therapist to whom Plaintiff was referred. Plaintiff has made no allegations that Defendant Hibbs conspired with state actors to provide substandard medical care. Plaintiff's allegations regarding Hibbs merely claim medical malpractice. Such a claim is not cognizable in an action brought pursuant to 42 U.S.C. § 1983. *E.g. Miltier v. Beorn,* 896 F.2d 848, 851–52 (4th Cir. 1990).

■ In order for Plaintiff to recover under 42 U.S.C. § 1983, his civil rights must have been violated by a person acting under the color of state law. *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *United States v. Price,* 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 1157 n. 7, 16 L.Ed.2d 267 (1966). State action is present if the conduct allegedly causing a deprivation of federal rights may be fairly attributed to the state. *Lugar,* 457 U.S. at 937, 102 S.Ct. at 2753. "Fair attribution" is determined by a two-factor test. First, the deprivation must be caused by the exercise of a right or privilege created by the state or by rule of conduct imposed by the state or by a person for whom the state is responsible. Second, the party charged with the deprivation of federal rights must be a state actor, such as a state official, a person acting in concert with a state official, or a person whose conduct is otherwise attributable to the state. *Id.; see also Monroe v. Pape,* 365 U.S. 167, 184, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961). A private defendant acts under the color of state law if "he is a willful participant in joint action with the state or its agents." *Dennis v. Sparks,* 449 U.S. 24, 27–28, 101 S.Ct. 183, 186–87, 66 L.Ed.2d 185 (1980); *Tower v. Glover,* 467 U.S. 914, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984).

■ Upon reviewing the matters alleged in Plaintiff's Complaint, as well as the applicable law, it is quite clear that Defendant Hibbs was not acting under color of state law. It does not appear that Defendant's alleged conduct could be fairly attributed to the State of West Virginia. He is more properly analogized to a public defender, *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), or a private physician involved in health care administration regulated by Medicaid, *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). Both of these decisions make clear that private individuals are not state actors merely because the state pays them or regulates them in some ways. It is the state's ability to control, and be responsible for the actions of, the individual which establishes state action. *See id.* 457 U.S. at 1004, 102 S.Ct. at 2785; *Polk County,* 454 U.S. at 321–22, 102 S.Ct. at 451–52; *West,* 487 U.S. at 52–53, n. 10, 108 S.Ct. at 2257 n. 10. Accordingly, the facts that prison administrators referred Plaintiff to Defendant Hibbs, a private physical therapist, and thereafter paid Hibbs for his services does not convert Defendant Hibbs into an individual whose actions are fairly attributable to the state. *E.g. Blum,* 457 U.S. at 1011, 102 S.Ct. at 2789.

Upon an examination of the allegations contained in Plaintiff's Complaint regarding Defendant Hibbs, the Court is convinced that the claims presented by Plaintiff are legally and factually frivolous within the meaning of 28 U.S.C. § 1915(d). *See Denton v. Hernandez,* — U.S. —, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992); *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Therefore, it is

ORDERED that Defendant Douglas Hibbs be, and is hereby, DISMISSED from this action.

## II

■ Defendant Walton is the Executive Director of the West Virginia Board of Medicine, the body to which Plaintiff on December 2, 1991 submitted a complaint regarding the services of Defendant Hart. After an investigation, the Board determined that Defendant Hart's course of treatment regarding Plaintiff had been proper.

Accepting all of Plaintiff's allegations regarding Defendant Walton as true, it is

apparent that Plaintiff has failed to state a cause of action against Defendant Walton. Plaintiff has alleged no deprivation of a right secured by federal law. He did not have a right to have the Board of Medicine censure Defendant Hart. Even assuming, solely for the sake of argument, that he did, vindication of that right would not result in Plaintiff receiving a knee operation. It has been stated that " '[l]iability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights. The doctrine of *respondeat superior* has no application under this section.' " *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir.1977) (quoting *Bennett v. Gravelle,* 323 F.Supp. 203, 214 (D.Md.), *aff'd,* 451 F.2d 1011 (4th Cir.1971)). "Having failed to allege any personal connection between [Defendant] and any denial of [Plaintiff's] constitutional rights, the action against him must fail." *Id.*

■ There is simply no indication in the record before the Court that Defendant Walton in any way affected the provision of health care at the Huttonsville Correctional Center. Accordingly, the doctrine of *respondeat superior,* which has little influence in § 1983 actions, is not applicable. To the extent that Plaintiff's allegations regarding Defendant Walton may state some sort of a due process violation resulting from a failure to protect Plaintiff from incompetent medical care, the Court is convinced that Defendant Walton owed Plaintiff no such duty. *See DeShaney v. Winnebago Cty. Soc. Servs. Dept.,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Generally speaking, a state actor has no duty to protect citizens of the state, absent the assumption of a custodial relationship. *Id.* at 198–99, 109 S.Ct. at 1005. While Plaintiff has been placed into circumstances where some state actors have such a custodial relationship giving rise to a duty to protect, it is apparent that Defendant Walton is not such a person. To extend the duty to provide basic medical treatment to an individual so tenuously connected to the basis of Plaintiff's claims would be to potentially subject a huge number of state agents to liability for actions with which they have little or no involvement. Such a situation would clearly subvert the limited role of *respondeat superior* in § 1983 actions. Accordingly, it is

ORDERED that Defendant Walton's Motion to Dismiss, construed as a Motion for Summary Judgment, be, and the same is hereby, GRANTED and that he be DISMISSED from this action.

### III

■ The Court must next examine whether an action under 42 U.S.C. § 1983 is the proper means of litigating this dispute regarding Defendants Hart and D'Amato. As noted above, private citizens generally are not amenable to suit under § 1983. Defendant Hart claims that professionals who work under contract with the State, as opposed to being state employees, are not state actors for the purposes of § 1983, relying on *West v. Atkins,* 815 F.2d 993 (4th Cir.1987), and *Calvert v. Sharp,* 748 F.2d 861 (4th Cir.1984), *cert. denied,* 471 U.S. 1132, 105 S.Ct. 2667, 86 L.Ed.2d 283 (1985).

The precedent relied upon by Defendant Hart has since been overruled by *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), in which the United States Supreme Court clearly established that:

It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State. Whether a physician is on the state payroll or is paid by contract, the dispositive issue concerns the relationship among the State, the physician, and the prisoner. Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights. [footnote deleted]

*Id.* 487 U.S. at 55–56, 108 S.Ct. at 2259.

■ Here, Defendant Hart performed the State function of administering medical

care to State prisoners. Defendant White apparently oversees the provision of health care at Huttonsville Correctional Center. As noted by the Supreme Court, this is a cooperative role with the State, despite the exercise of Hart's independent professional judgment. *Id.* at 51, 108 S.Ct. at 2256. Therefore, Hart is a state actor for the purposes of § 1983. The fact that Hart is a private physician contracting with Correctional Medical Systems, Inc. does not alter this conclusion. The role performed by the physician, not privity of contract, was the dispositive issue in *West.*

The conclusion that Defendant Hart is a state actor under § 1983 compels the conclusion that D'Amato, too, is a state actor for the purposes of this action. Generally, a party in his position would not be acting under color of state law. *See West,* 487 U.S. at 52–53 n. 10, 108 S.Ct. at 2257 (professional does not become a state actor simply by contact with the State or a person in the custody of the State). However, where an individual has engaged in a willful conspiracy with a state actor, as Plaintiff has alleged, the individual can be liable under § 1983. *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980).

### IV

■ Like claims of unconstitutional conditions of confinement regarding inmates, claims of deliberate indifference to serious medical needs are analyzed under an Eighth Amendment cruel and unusual punishment standard whereby the inmate must establish that the mistreatment results from the deliberate indifference of the jail administration staff. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *see also Wilson v. Seiter,* —— U.S. ——, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (applying the "deliberate indifference" standard to claims regarding conditions of confinement). To constitute the "punishment" proscribed by the Eighth Amendment, the inmate must show that the medical neglect is wantonly imposed by jail officials. *Id.* This culpable state of mind requires more egregious behavior than mere negligence. *Id.; Miltier v. Beorn,* 896 F.2d 848, 852 (4th Cir.1990).

"Deliberate indifference" is established, upon review of the totality of circumstances demonstrated by the record, either by actual intent to deprive a prisoner of medical care or by reckless disregard of a prisoner's medical needs. *Id.; Parrish v. Johnson,* 800 F.2d 600, 606 (6th Cir.1986).

### V

■ In analyzing the constitutionality of the health care provided Plaintiff, the Court believes it best to first examine Plaintiff's allegations regarding a conspiracy between Defendants Hart and D'Amato to avoid providing necessary surgery. It appears that the conspiracy allegations rest on two assertions: 1) Plaintiff's claim that the course of treatment provided is simply the manner in which these two Defendants do business; and 2) Defendant D'Amato's questioning Plaintiff regarding the length of his confinement before recommending physical therapy instead of surgery. Plaintiff simply cannot rest on conclusory legal claims when Defendants have submitted affidavits and documents countering these naked allegations. *Ballinger v. North Carolina Agric. Extension Serv.,* 815 F.2d 1001, 1007 (4th Cir.), *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). "It is well settled that mere allegations of conspiracy, backed up by no factual showing of participation in a conspiracy, are insufficient to support such an action against a motion for summary judgment based on affidavits establishing the absence of any participation." *Id.* (quoting *Buschi v. Kirven,* 775 F.2d 1240, 1248 (4th Cir.1985)). Because Plaintiff's Complaint contains no facts to support his legal conclusions, this Court must find his conspiracy allegations to be meritless. *See Revene v. Charles County Comm'rs,* 882 F.2d 870, 873–74 (4th Cir.1989) (to survive dispositive motion, complaint containing legal conclusions must also contain facts allowing an inference of the alleged conclusion).

The Court notes that neither of Plaintiff's proffered contentions supports a finding of conspiracy in light of the evidence presented by Defendants and the affidavit of Defendant Hart. The Court also feels

compelled to look beyond the actual allegations contained in the Complaint to reach the determination that Plaintiff's conspiracy claims simply are not believable. *See Denton v. Hernandez,* —— U.S. ——, ——, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340, 345 (1992).[1] A typical example of a conspiracy between these Defendants would involve a situation whereby Defendant Hart would refer prisoner patients to Defendant D'Amato, who would then recommend unnecessary medical procedures in order to generate revenue, some of which would then be "kicked-back" to Defendant Hart. Under this scenario, or any other believable situation, the goal of the conspiracy would, presumably, be to generate unwarranted income for the parties. Plaintiff's allegations, that these Defendants have conspired to limit health care costs incurred by the State of West Virginia, contradicts the purpose of a conspiracy which parties in the positions of Defendants Hart and D'Amato would establish. Plaintiff's allegations regarding this point are not only unsubstantiated, but absolutely unbelievable. Because the conspiracy allegations are factually frivolous within the meaning of 28 U.S.C. § 1915(d), it is

ORDERED that Defendant D'Amato be, and is hereby, DISMISSED from this action.

## VI

■ The liability, if any, of Defendants Hun, Whyte, Holland, Duncil, and White depends upon the extent to which they may be held accountable for the medical decisions made by the health care providers involved in this action. The controlling precedent regarding this issue appears to be *Miltier v. Beorn,* 896 F.2d 848 (4th Cir. 1990):

Section 1983 liability on the part of the supervisory defendants requires a show-

ing that: (1) the supervisory defendants failed promptly to provide an inmate with needed medical care, ...; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance....; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations.

*Id.* at 854 (citations omitted). It is indisputable that Plaintiff was provided copious access to the prison's medical facilities, and that he makes no claims that the five Defendants supervising, in some capacity, the provision of health care interfered with a decision to operate on Plaintiff. Accordingly, the Court interprets Plaintiff's Complaint as alleging the third basis of liability discussed above.

The *Miltier* opinion makes clear that mere knowledge of the medical decisions made by prison physicians, or the prisoner's disagreement with these decisions, does not constitute deliberate indifference:

The plaintiff "not only must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must also show that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" ... It is insufficient merely to show deliberate indifference to a serious medical need on the part of the subordinate physicians.

*Id.* (quoting *Slakan v. Porter,* 737 F.2d 368, 373 (4th Cir.1984)). The opinion continued:

Even assuming that the physicians' [actions were] a "pervasive and unreasonable risk of harm from some specified source," ... it would be an unprecedented extension of the theory of supervisory liability to charge these wardens, not

---

1. [W]e observed that the *in forma pauperis* statute, unlike Rule 12(b)(6), "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.... Examples of the lat-

ter class," we said, "are claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar."
*Id.* (quoting *Neitzke v. Williams,* 490 U.S. 319, 327–28, 109 S.Ct. 1827, 1832–33, 104 L.Ed.2d 338 (1989)).

only with ensuring that [plaintiff] received prompt and unfettered medical care, but also with ensuring that their subordinates employed proper medical procedures—procedures learned during several years of medical school, internships, and residencies. No record evidence suggests why the wardens should not have been entitled to rely upon their health care providers' expertise.... Although record evidence suggests that the wardens were aware of [plaintiff's] deterioration, it would be ironic indeed if their awareness, resulting from close monitoring of [plaintiff's] condition, became the vehicle by which they were rendered liable under § 1983 for their subordinates' misconduct.

*Id.* at 854–55.

Based on the above, it is clear that these five Defendants may not be held liable for any improper medical treatment afforded Plaintiff. They, as in the *Miltier* decision, were entitled to rely upon the professionals employed to provide medical treatment to the state's prisoners. These professionals are in a far better position to know all relevant facts and properly treat medical problems. The fact that Plaintiff had voiced his disagreement with the prescribed course of treatment does not mandate a different conclusion. It has been said that where prison physicians had provided treatment and promptly attended to a prisoner's medical needs, the fact that improper treatment may have been afforded did not change the conclusion that supervisory personnel were "beyond any doubt not liable to the plaintiff under any conceivable state of facts." *Boyce v. Alizaduh,* 595 F.2d 948, 953 (4th Cir.1979). Where nothing suggests that supervisors tacitly approved the provision of grossly incompetent medical care by their subordinates, a plaintiff has failed to carry his heavy burden of proof in a supervisory liability case. *See Miltier,* 896 F.2d at 855; *Slakan,* 737 F.2d at 373. Accordingly, it is

ORDERED that the dispositive motions submitted by Defendants Hun, Whyte, Holland, Duncil, and White be, and the same are hereby, GRANTED.

## VII

The final question to be resolved in this matter is whether the course of treatment recommended by Defendant Hart, with the advice of other health care professionals, was so deficient as to qualify as deliberate indifference to a serious medical need. This Court's analysis of this issue is guided, though not controlled, by the decision of the United States Court of Appeals for the Fourth Circuit in *Simkus v. Granger,* No. 91–6303 (4th Cir. July 30, 1991) [940 F.2d 653 (Table) ] (per curiam). This decision recognized the existence of a serious medical need when a medical problem had been diagnosed and required treatment on an ongoing basis. *Id.,* slip op. at 4–5. "The fact that an inmate has received some care for his condition does not preclude recovery under the eighth amendment." *Id.,* slip op. at 4 (citations omitted).

This Court accepts the following facts as important to its analysis: 1) Plaintiff has an artificial right knee which has been giving him trouble, thereby requiring medical treatment; 2) Medical professionals have determined that some form of surgery/revision may be necessary; 3) Plaintiff has informed doctors and supervisors of his continuing medical ailments; 4) Little or no relief has yet been afforded by the chosen course of treatment; and 5) Plaintiff has expressed his disagreement with the present treatment. Despite the above, the Court is satisfied that Plaintiff has stated no claim of a constitutional violation.

Plaintiff has complained regarding his treatment to numerous entities, including the West Virginia Board of Medicine. The Board fully investigated the allegations and concluded that Plaintiff's treatment was not substandard. While this determination does not end this Court's inquiry, it is certainly due considerable deference. The Board is much more knowledgeable regarding acceptable treatment than is this Court.

An examination of the record before the Court demonstrates that Plaintiff has been examined by a number of health care professionals. Some apparently recommend

replacement surgery, which is the option favored by Plaintiff. Others apparently favor surgery as a final resort to be pursued after physical therapy. Unlike the situation in *Simkus*, there is apparently a split of opinion regarding the necessity of surgery, at least at the present time. It is established law that disagreements between an inmate and his physician do not give rise to a claim under 42 U.S.C. § 1983, *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975), unless exceptional circumstances are alleged, *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir.1985). "Questions of medical judgment are not subject to judicial review." *Russell*, 528 F.2d at 319 (citing *Shields v. Kunkel*, 442 F.2d 409 (9th Cir. 1971)).

Accepting Plaintiff's allegations as true, the Court is convinced that the present dispute amounts to nothing more than an attempt to have this Court dictate a course of treatment which he believes should be taken. Unlike *Simkus*, Plaintiff does not present a situation where the need for surgery is obvious, professional opinion regarding the necessity of surgery is nearly unanimous, and proper treatment has been delayed for an extended period of time. Simply put, Plaintiff has received medical care which, viewed in a light most favorable to his cause, does not constitute indifference to his medical problems. Plaintiff believes that he should receive immediate knee replacement surgery. Defendants recommend physical therapy before knee surgery/revision. Plaintiff has refused to cooperate with his treatment program and, accordingly, is not without blame in this situation.

Claims of medical malpractice, to the extent that the medical records in this action may suggest such a conclusion, are not sufficient to state a § 1983 claim. Nothing in the record before the Court suggests any actions which were "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851 (referencing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986)). As Defendants note, "The consensus seems to be that plaintiff does not 'need' knee surgery,

though it admittedly would be nice if he could have it." Surgery may eventually be necessary, and this Court recognizes that no Defendant has ruled out this possibility. However, Plaintiff has failed to adequately address Defendants' showing that non-surgical methods of treatment are a viable course of action, at least at the present time. Accordingly, it is

ORDERED that Defendant Hart's Motion for Summary Judgment be, and the same is hereby, GRANTED and that the above-styled civil action be STRICKEN from the docket of this Court.

If Plaintiff should desire to appeal the decision of this Court, written notice of appeal must be received by the Clerk of this Court within thirty (30) days from the date of the entry of the Judgment Order, pursuant to Rule 4, Federal Rules of Appellate Procedure. The $5.00 filing fee for the notice of appeal and the $100.00 docketing fee should also be submitted with the notice of appeal. In the alternative, at the time the notice of appeal is submitted, Plaintiff may, in accordance with the provisions of Rule 24(a), Federal Rules of Appellate Procedure, seek leave to proceed *in forma pauperis* from the United States Court of Appeals for the Fourth Circuit.