Clay Vance CONNER, Plaintiff–Appellant,

v.

Kerry DONNELLY, M.D., Defendant–Appellee.

Clay Vance CONNER, Plaintiff–Appellant,

v.

Kerry ·DONNELLY, M.D., Defendant–Appellee.

Nos. 93–6696, 94–6622.

United States Court of Appeals, · Fourth Circuit.

Argued Sept. 26, 1994.

Decided Dec. 20, 1994.

---

**ARGUED:** Neal Lawrence Walters, Gilliam, Scott & Kroner, P.C., Charlottesville, VA, for appellant. Gary Elton Tegenkamp, Wooten & Hart, P.C., Roanoke, VA, for appellee.

Before RUSSELL and MURNAGHAN, Circuit Judges, and CHASANOW, United States District Judge for the District of Maryland, sitting by designation.

Reversed and remanded by published opinion. Judge RUSSELL wrote the opinion, in which Judge MURNAGHAN and Judge CHASANOW joined.

## OPINION

DONALD RUSSELL, Circuit Judge:

This case presents the question of whether a physician who provides medical services to an inmate of a state-run prison acts "under color of state law," within the meaning of 42 U.S.C. § 1983. It is a case of first impression in this Circuit.

### I

Clay Vance Conner, an inmate of the Virginia prison system assigned to the Pulaski Correctional Center, was trampled by a steer while performing duties at a livestock operation maintained at the Bland Correctional Center. The prison physician at Bland x-rayed Conner's arm and decided to transfer his case to an outside orthopaedic physician. Prison officials transported Conner to the

Radford Orthopaedic Center, where Dr. Kerry Donnelly examined and treated Conner.

The district court did not make any factual findings regarding the quality of Donnelly's care. According to Conner, Donnelly prescribed Motrin as part of Conner's treatment, even after Conner explained that he had an ulcer that made him sick when he took certain pain killers, including Motrin. Conner complained to a prison physician about problems he was experiencing with Motrin. The prison physician explained that he could not override Donnelly's prescription but could only lower the dosage. Conner alleges that the pain medication caused hemorrhaging and that Donnelly failed to take corrective action after being informed of the reaction. Donnelly disputes these allegations.

Conner visited Donnelly on four occasions over a six month period. All visits occurred at the Radford Orthopaedic Center, and at each visit Conner was accompanied by a prison guard. After the final visit, Donnelly sent Conner a letter stating that Donnelly's office, after thirty days, would no longer treat Conner other than in an emergency.

Donnelly is an employee of the Radford Orthopaedic Center. Although Donnelly was reimbursed for his services by the Commonwealth of Virginia, neither Donnelly nor the Radford Orthopaedic Center is employed by the Commonwealth or the Department of Corrections, and neither has a contractual relationship with any correctional facility to provide care for its inmates.

Pursuant to 42 U.S.C. § 1983, Conner brought this action against Donnelly in the Western District of Virginia for violation of his Eighth Amendment right to be free from cruel and unusual punishment. He claims that Donnelly, in his provision of medical care to Conner, was deliberately indifferent to Conner's serious medical needs.

The district court, concluding that Donnelly did not act "under color of state law,"

granted summary judgment in favor of Donnelly.[1] Its decision turned on the fact that Donnelly did not have a contractual relationship with the state of Virginia to provide medical services to prison inmates. The United States Supreme Court held in *West v. Atkins*, 487 U.S. 42, 54, 108 S.Ct. 2250, 2257, 101 L.Ed.2d 40 (1988), that a private physician under contract with a state to provide medical services to prison inmates acts under color of state law when treating a prisoner. Although the district court did not specifically mention *West*, it implicitly distinguished that case on the ground that Donnelly was not under contract to treat prison inmates but merely "a private physician who saw [Conner] only upon referral of an institutional physician." Joint Appendix ("J.A.") 150.

The district court relied on two other district court cases that distinguished *West* because the physician (or medical care provider) in those cases did not have a contractual relationship with the prison to provide medical care to inmates. In *McIlwain v. Prince William Hospital*, 774 F.Supp. 986, 989–90 (E.D. Va.1991), the district court held that a private hospital that provided emergency medical care to a prison inmate did not act under color of state law where the hospital had no contract with the prison to treat its inmates. The *McIlwain* court expressly distinguished *West* based on the lack of a contractual relationship between the hospital and the prison. *Id.* at 989. Furthermore, in *Calvert v. Hun*, 798 F.Supp. 1226, 1229 (N.D.W. Va.1992), the district court held that a private physical therapist to whom prison administrators referred an inmate did not act under color of state law even though the state paid for the therapist's services. The fact that the physical therapist had no contract with the prison to treat its inmates clearly influenced the *Calvert* court's decision. Although the court did not apply *West* to the physical therapist and concluded that he did not act under color of state law, it

---

**1.** Although this appeal primarily concerns the district court's summary judgment order, Conner also appeals a second order from the district court. After the district court granted summary judgment, Conner filed a notice of appeal and moved to correct mistakes under Rule 60 of the

Federal Rules of Civil Procedure. The district court denied Conner's motion for post-judgment relief in a May 16, 1994 order, which Conner also appeals. The appeals to the grant of summary judgment and the denial of post-judgment relief were consolidated in this Court.

applied *West* to another defendant, the treating physician, and concluded that the physician, who did have a contract with the prison to treat its prisoners, acted under color of state law. *Id.* at 1230–31.

No circuit court has considered whether the reasoning of *West* extends to physicians not under contract with the state to provide medical services to prison inmates. The district courts that have considered the issue, including the court below, are in agreement that the physician who treats a prisoner does not act under color of state law in the absence of a contractual relationship with the prison to provide medical care to its inmates. *See Calvert*, 798 F.Supp. at 1228–29; *McIlwain*, 774 F.Supp. at 989–90; *Martinson v. Bruce*, 1991 WL 241857, *2 (D. Kan. Oct. 22, 1991) (holding that private orthopaedic physician who saw inmate for one visit at a private clinic not located on prison property did not act under color of state law where physician had no contractual relationship with state to provide medical care to inmates).

Today we go against these district courts and hold that a physician who treats a prisoner acts under color of state law even though there was no contractual relationship between the prison and the physician.

## II

To prevail under 42 U.S.C. § 1983, a plaintiff must show, first, that he was deprived of a right secured by the constitution or laws of the United States, and second, that the defendant acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988). The district court granted summary judgment in favor of Donnelly because it concluded that he did not act under color of state law. It did not reach

the issue of whether Donnelly deprived Conner of a right secured by the federal constitution or federal law, and that issue is therefore not before this Court on this appeal.[2]

The "under color of state law" element of a § 1983 claim requires that "the conduct allegedly causing the deprivation of [the plaintiff's rights] be fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). As a general rule, "a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West*, 487 U.S. at 50, 108 S.Ct. at 2255; *Lugar*, 457 U.S. at 936, n. 18, 102 S.Ct. at 2752–53 n. 18 ("state employment is generally sufficient to render the defendant a state actor"); *but see Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (holding that a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding). The "under color of state law" requirement has a greater impact where the defendant is a private party not employed by the state.

■ Although the Supreme Court "has articulated a number of different factors or tests [for the "under color of state law" requirement] in different contexts," *Lugar*, 457 U.S. at 939, 102 S.Ct. at 2754, it has not adopted a succinct test applicable to all situations. This Court, however, has identified three situations in which particular conduct by a private entity constitutes "state action."[3] *Haavistola v. Community Fire Co. of Rising Sun*, 6 F.3d 211, 215 (4th Cir.1993) (citing, *inter alia*, *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)).

2. Conner claims that Donnelly deprived him of his Eighth Amendment right to be free from cruel and unusual punishment. To establish an Eighth Amendment violation, Conner must show that Donnelly's treatment amounted to more than mere negligence; it must have amounted to "deliberate indifference to [the] serious medical needs" of Conner. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). The district court conducted no factfinding on the issue of whether Donnelly's conduct demonstrated deliberate indifference to Conner's serious medical needs.

3. The color of state law requirement under § 1983 is essentially the same as the "state action" requirement under the Fourteenth Amendment. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935, 102 S.Ct. 2744, 2752, 73 L.Ed.2d 482 (1982); *Rendell–Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 2769–70, 73 L.Ed.2d 418 (1982); *Haavistola v. Community Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 215 (4th Cir.1993). In this opinion, the terms "state action" and "under color of state law" are used interchangeably.

First, a private party that is regulated by the state acts under color of state law where there is a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Blum*, 457 U.S. at 1004, 102 S.Ct. at 2786 (citing *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974)). Second, a private party acts under color of state law where the state, through extensive regulation of the private party, has exercised coercive power or has provided such significant encouragement that the action must in law be deemed to be that of the state. *Id.* at 1004, 102 S.Ct. at 2786. Finally, a private party acts under color of state law where "the private entity has exercised powers that are 'traditionally the exclusive prerogative of the state.'" *Id.* at 1005, 102 S.Ct. at 2786 (citing *Jackson*, 419 U.S. at 353, 95 S.Ct. at 455).

The Supreme Court made clear in *West* that the provision of medical services to prison inmates is traditionally the exclusive prerogative of the state. Virginia has a constitutional obligation to provide adequate medical care to its prisoners because prisoners, due to their incarceration, cannot obtain medical care on their own. *Estelle v. Gamble*, 429 U.S. 97, 103–04, 97 S.Ct. 285, 290–91, 50 L.Ed.2d 251 (1976); Va.Code Ann. § 53.1–32 (Michie Supp.1994) (requiring Virginia correctional facilities to provide medical services to its prisoners). "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Estelle*, 429 U.S. at 103, 97 S.Ct. at 290. The provision of medical services to prison inmates is the state's exclusive prerogative for the same reason it is its constitutional duty: a prisoner has no alternative means of acquiring medical care other than those provided by the state.

To fulfill its constitutional obligation, a state employs its own physicians or pays private physicians to treat its prisoners. *See West*, 487 U.S. at 55, 108 S.Ct. at 2258–59. In either case, the state relies on the independent professional judgment of the physicians it has authorized to treat its prisoners. *Id.* The state does not establish its own standards for the provision of medical care to prison inmates.

The fact that physicians are professionals exercising their own independent professional judgment does not determine whether they act under color of state law when treating prisoners. *Id.* at 50–52, 108 S.Ct. at 2255–57. Although physicians providing medical care to prison inmates have a professional and ethical obligation to make independent medical judgments, these obligations do not set physicians in conflict with the state. *Id.* at 51, 108 S.Ct. at 2256. Instead, the physician cooperates with the state and assumes the state's constitutional obligation to provide medical care to its prisoners. *Id.* In sharp contrast, a public defender does not act under color of state law when representing a defendant in a criminal case, *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), because the professional and ethical obligations of an attorney representing a criminal defendant put the attorney in the position of the state's adversary. *West*, 487 U.S. at 51, 108 S.Ct. at 2256 (distinguishing *Polk County*). Although the independent exercise of professional judgment may otherwise indicate that a defendant did not act under color of state law, it is not relevant where the state employs the professional to fulfill the state's constitutional obligations. *Id.* at 53, n. 10, 108 S.Ct. at 2257, n. 10. As a general rule, then, a professional employed by the state to fulfill the state's constitutional obligations acts under color of state law; the narrow exception for public defenders, whose professional obligations make them the adversaries of the state, does not apply to physicians, who act on the state's behalf.

The Supreme Court held in *West* that a private physician under contract with the State of North Carolina to provide medical services to prison inmates, but not employed directly by the state, nonetheless acts under the color of state law when treating an inmate. *Id.* at 54–57, 108 S.Ct. at 2258–60. According to the Supreme Court, a direct employment relationship with the state is not required to find that a physician who treated a prison inmate acted under color of state law. Instead, the Supreme Court stated:

It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State. Whether a physician is on the state payroll or is paid by contract, the dispositive issue concerns the relationship among the State, the physician, and the prisoner. *Id.* at 55–56, 108 S.Ct. at 2259. Regardless of the physician's employment relationship with the state, any physician authorized by the state to provide medical care to a prisoner exercises power that is traditionally the exclusive prerogative of the state. If the physician abuses this power by demonstrating deliberate indifference to the prisoner's serious medical needs, the prisoner suffers a deprivation under color of state law—not because the state has employed a bad physician, but because the state has incarcerated the prisoner and denied him the possibility of obtaining medical care on his own. *See id.* at 55, 108 S.Ct. at 2258–59.

■ We believe that the Supreme Court's analysis applies also to private physicians who treat state prisoners without the benefit of a contract. Regardless of whether the private physician has a contractual duty or simply treats a prisoner without a formal arrangement with the prison, the physician's function within the state system is the same: the state authorizes the physician to provide medical care to the prisoner, and the prisoner has no choice but to accept the treatment offered by the physician. Even where a physician does not have a contractual relationship with the state, the physician can treat a prisoner only with the state's authorization. If a physician treating a prisoner—whether by contract or by referral—misuses his power by demonstrating deliberate indifference to the prisoner's serious medical needs, the prisoner suffers a deprivation under color of state law. The source of the deprivation does not change because the physician has no contractual relationship with the state: the physician acts under color of state law because the state has incarcerated the prisoner and denied him the possibility of obtaining adequate medical care on his own.

■ We conclude that Donnelly acted under color of state law when he treated Con-

ner even though he did not have a contractual relationship with the Commonwealth of Virginia to provide medical care to its prisoners. The state had a constitutional duty to provide adequate medical care to Conner. In furtherance of its constitutional obligation, the prison referred Conner to Donnelly and paid Donnelly for his services rendered to Conner. Although Donnelly had neither an employment nor a contractual relationship with the state, Donnelly had the state's authorization to treat Conner. Furthermore, Donnelly could treat Conner only because he was so authorized by the state. In treating Conner, Donnelly exercised power that is traditionally the exclusive prerogative of the state. If Donnelly, as Conner has alleged, abused his power by demonstrating deliberate indifference to Conner's serious medical needs, Conner has suffered a deprivation under color of state law because the Commonwealth of Virginia has incarcerated Conner and had denied him the opportunity of obtaining medical care from a physician other than Donnelly.

Donnelly acted under color of state law even though he had no obligation—either through direct employment or by contractual arrangement—to accept Conner as a patient. Although, in *West,* the physician Atkins had a contractual obligation to provide medical care to the prisoner West, the Supreme Court's reasoning turned on the physician's function within the state system, and not his obligation to treat the prisoner. The Supreme Court held that Atkins acted under color of state law because the state, in order to fulfill its constitutional duty, authorized Atkins to treat West, and because West, due to his incarceration, had no opportunity for obtaining medical care other than to accept Atkins's treatment. The fact that Atkins had a contractual obligation to accept West as a patient was incidental. Unlike the physician in *West,* Donnelly had no obligation to accept Conner as a patient. Nonetheless, when Donnelly accepted Conner as a patient and provided him with medical care, he acted under color of state law, regardless of the fact that he had no obligation to accept Conner as a patient in the first place.

Furthermore, the fact that Donnelly treated Conner, at all times, at the Radford Orthopaedic Center using his own equipment does not change our conclusion that Donnelly acted under color of state law. Although the physician in *West* treated prisoners within the prison hospital and using prison equipment, *West,* 487 U.S. at 56, n. 15, 108 S.Ct. at 2259–60, n. 15, the Supreme Court's decision did not turn on this fact. It is the physician's function while working for the state, not the place where he performs his duties, that determines whether he acts under color of state law.[4] Donnelly acted under color of state law because he assumed the state's constitutional obligation to provide medical care to Conner; it is irrelevant for the "under color of state law" inquiry that Donnelly provide his medical services in his office instead of the prison hospital.

If we reached the opposite conclusion today and held that a physician who treats a prisoner does not act under color of state law where the physician has no contractual relationship with the prison to provide medical services to its prisoners, this Court would undermine the Supreme Court's holding in *West.* The Supreme Court noted in *West,* "Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *Id.* at 56, 108 S.Ct. at 2259. Given this concern, it

follows that the state should not be able to relieve itself of its constitutional duty to provide adequate medical treatment to those in its custody by *not* contracting out its medical care and, instead, relying on informal relationships with physicians.[5] The state's tactical referral of prison medical care to private physicians should not deprive the prisoners of the means to vindicate their Eighth Amendment rights.

The state bears an affirmative obligation to provide medical care to its inmates; when it delegates that duty to a physician who voluntarily assumes that obligation, that physician acts under color of state law. *Id.* Although the physician in *West* voluntarily assumed the state's obligation by contracting to provide medical care to state inmates, the *West* Court did not hold that the only way a physician voluntarily assumes the state's obligation to provide medical care to inmates is by contract. We hold that a private physician who treats a prisoner upon referral by the state, and who knows that the patient is a prisoner, voluntarily assumes the state's obligation to provide medical care to inmates.

### III

In holding today that a private physician acts under color of state law when he treats a prison inmate regardless of the physician's contractual relationship with the prison, we reject the reasoning of the district court in

4. The Supreme Court noted that Atkins treated prisoners at the prison hospital to distinguish Atkins's provision of medical care to West from a private physician's provision of medical care to regular patients. *West,* 487 U.S. at 56, n. 15, 108 S.Ct. at 2259–60, n. 15. The Supreme Court recognized that the

> correctional setting, specifically designed to be removed from the community, inevitably affects the exercise of professional judgment. Unlike the situation confronting free patients, the non-medical functions of prison life inevitably influence the nature, timing, and form of medical care provided to inmates such as West.... [S]tudies of prison health care, and simple common sense suggest that [Atkins's] delivery of medical care was not unaffected by the fact that the State controlled the circumstances and sources of a prisoner's medical treatment.

*Id.*

It is irrelevant, however, that Donnelly treated Conner in his office, where he treats regular patients. "[T]he fact that a state employee's role parallels one in the private sector is not, by itself, reason to conclude that the former is not acting under color of state law." *Id.* Donnelly acted under color of state law, not because he treated Conner differently than other patients, but because the state authorized him to treat Conner in order to fulfill the state's constitutional obligation toward Conner.

5. Although not crucial to our decision today, we note that Donnelly likely had an informal arrangement with the Virginia Department of Corrections to treat its prisoners. At oral argument, Donnelly's attorney stated that Donnelly has treated prisoners other than Conner. His attorney, however, did not answer whether Donnelly has ever refused to treat a prisoner from the Virginia Department of Corrections in the past.

*Calvert v. Hun,* 798 F.Supp. 1226 (N.D.W. Va.1992).

In *Calvert,* the district court held that a private physical therapist who had no contract with the State of West Virginia to provide therapy for prison inmates did not act under color of state law when he treated a prisoner referred to him by the prison. *Id.* at 1228–29.

Instead of applying *West,* the district court analogized the physical therapist to a public defender representing a criminal defendant and to a private physician involved in health care administration, neither of which has been held to act under color of state law. *See Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (public defender does not act under color of state law); *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (private physicians and administrators at a privately owned and operated nursing home did not act under color of state law in deciding to discharge Medicaid patients or transfer them to lower levels of care). The court in *Calvert* explained that both *Polk County* and *Blum* made clear that:

> private individuals are not state actors merely because the state pays them or regulates them in some ways. It is the state's ability to control, and be responsible for the actions of, the individual which establishes state action.

798 F.Supp. at 1229. Because the state did not exercise control over the medical decisions of the physical therapist, and because the fact that the state paid for the therapist's services does not in itself establish state action, the district court concluded that the physical therapist did not act under color of state law. *Id.*

The *Calvert* court failed to consider, however, that the physical therapist was employed by the state to fulfill the state's constitutional obligations to its prisoners. Because a physician (or physical therapist) treating a state prisoner is employed by the state to fulfill its constitutional obligations, the fact that the physician (or physical therapist) exercises his own independent professional judgment does not mean that he does not act under color of state law. *See West v.*

*Atkins,* 487 U.S. 42, 53, n. 10, 108 S.Ct. 2250, 2257, n. 10, 101 L.Ed.2d 40 (1988) (distinguishing *Blum*).

The district court in *Calvert* should have distinguished *Blum* on this ground. The physician and nursing home administrators in *Blum,* although paid by the state to provide medical services to Medicaid patients, were not employed by the state to fulfill its constitutional obligations. Thus, it was significant to the "under color of state law" analysis that their decisions to discharge Medicaid patients or transfer Medicaid patients to lower levels of care were based on their independent professional judgments, and not on state direction. *Id.* at 52–53, n. 10, 108 S.Ct. at 2257, n. 10. The district court in *Calvert* should not have relied on *Blum* because the physical therapist, in providing medical care to state prisoners, was employed by the state to fulfill the state's constitutional obligations to its prisoners.

Furthermore, the district court should not have relied on *Polk County,* even though the public defender in that case was employed by the state to fulfill the state's constitutional obligations to indigent criminal defendants. As explained in the previous section, public defenders representing indigent defendants in criminal proceedings do not act under color of state law because their representation puts them in the position of the state's adversary. *West,* 487 U.S. at 50–52, 108 S.Ct. at 2255–57. That rationale does not apply to a physical therapist, or any medical provider, who provides medical care to a state prisoner.

The district court in *Calvert* found that the physical therapist did not act under color of state law, even though it concluded that another defendant, a physician, did act under color of state law because he had a contract with the state to provide medical care to prisoners. *Calvert,* 798 F.Supp. at 1230–31. The district court, however, did not explain why the analysis in *West* applied only to physicians under contract to provide medical care to state prisoners, but not to physicians (or physical therapists) who treat prisoners only upon referral. We believe that the holding in *West* is not limited to physicians

under contract with the state to provide medical care to its prison inmates.

We also distinguish the holding of the district court in *McIlwain v. Prince William Hospital*, 774 F.Supp. 986, 989–90 (E.D. Va.1991), that the hospital did not act under color of state law in treating a prisoner rushed to the hospital for emergency care. The district court noted that "[b]y seeking emergency treatment for McIlwain [the prisoner], the prison did not delegate its duty to provide him with medical care; the Hospital, in admitting McIlwain to its emergency room, did not accept any such duty." *Id.* at 989. Although we question the court's conclusion that the prison did not delegate its constitutional obligation to the hospital, we agree that the hospital did not accept such a duty. This fact distinguishes the case from *West*, in which the Court specifically noted that the prison bore an obligation to provide adequate medical care to the prisoner, that the prison delegated its obligation to the physician, and that the physician voluntarily assumed that obligation.[6] *West*, 487 U.S. at 56, 108 S.Ct. at 2259.

Because this issue is not before this Court, we do not decide today whether evidence that a physician did not voluntarily accept a state's delegation of constitutional duties should affect a court's state action analysis. We merely state that the holding in *McIlwain* is not inconsistent with our decision in this case.

### IV

We conclude that Donnelly acted under color of state law even though he did not have a contractual relationship with the Commonwealth of Virginia to provide medical care to state prisoners. In so holding, we note that Conner has not shown that Donnel-

ly is subject to § 1983 liability. Conner must still show that Donnelly's provision of medical care to Conner amounted to deliberate indifference to Conner's serious medical needs. Conner will now have the opportunity to make his case.

We reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.[7]

*REVERSED AND REMANDED.*

---

**6.** We note that Donnelly, when he accepted Conner as a patient, knew that Conner was a prisoner. Prison officials escorted Conner to Donnelly's office during each visit. Furthermore, on Conner's first visit and at every other visit thereafter, Donnelly completed and signed a Virginia Department of Corrections Consultation Form regarding his treatment of Conner. J.A. 59–63.

**7.** Conner has filed in this Court a motion to subpoena new evidence and a motion to enjoin

the Department of Corrections from retaliating against him for filing legal action. Although we recognize that Conner had not yet received the assistance of court-appointed counsel at the time he filed these motions, nonetheless he should have filed them in the district court. These motions are not relevant to this appeal, and we take no action on them. If Conner wishes, he may refile these motions in the district court.