**James McKendrick BROWN, by his guardian and best friend Lillian BROWN Plaintiff**

v.

**KENNEDY KRIEGER INSTITUTE, INC. Defendant**

No. CIV. H–96–1829.

United States District Court, D. Maryland.

Jan. 20, 1998.

*MEMORANDUM AND ORDER*

ALEXANDER HARVEY, II, Senior District Judge.

This civil action has been brought under 42 U.S.C. § 1983 by James McKendrick Brown ("Jake"), a mentally retarded adult who has here sued through his court-appointed guardian, Lillian Brown. Named as defendant is Kennedy Krieger Institute, Inc. ("KKI"), a private non-profit corporation which provides community supported living arrangement services and community based residential services for mentally disabled adults. From 1993 until 1996, plaintiff resided in several homes operated by KKI. In this suit, he claims that defendant KKI violated his federal constitutional rights in various respects, and he has also asserted pendent claims under state law. As relief, plaintiff seeks substantial compensatory damages.[1]

There have been extensive pretrial proceedings in this case. Defendant's motion to dismiss the complaint was denied by the Court's Memorandum and Order of September 11, 1996. In its later Memorandum and Order of June 23, 1997, defendant's motion to dismiss the amended complaint was granted in part and denied in part, with leave to plaintiff to file a second amended complaint. Thereafter, leave was granted to plaintiff to file a third amended complaint, which is the pleading in which plaintiff's claims are now pending before the Court.

Pursuant to various Scheduling Orders entered by the Court, the parties have engaged in extensive discovery. Now pending before the Court is defendant's motion for summary judgment.[2] The parties have submitted lengthy memoranda and voluminous exhibits in support of and in opposition to the pending motion, including affidavits and excerpts of depositions taken during discovery. A hearing on the pending motion has been held in open court. For the reasons to be stated herein, defendant's motion for summary judgment will be granted in part and denied in part.

---

1. Plaintiff's claim for punitive damages has previously been dismissed by the Court.

2. There is also pending plaintiff's motion to strike certain affidavits, charts and graphs submitted by defendant. In view of the Court's determination of the issues in this case, it is not necessary for the Court to rule on plaintiff's motion to strike at this time.

## I

### *Background Facts* [3]

Since birth, plaintiff James McKendrick Brown has been retarded.[4] He is a non-verbal, partially blind and severely mentally retarded adult who is now 26 years of age. From 1984 until 1993, he resided at Rosewood Center ("Rosewood"), a State residential treatment center for the mentally disabled. In 1992, Lillian Brown, Jake's grandmother, agreed with Rosewood officials that a community residential program should be sought for plaintiff. On May 21 1992, an agreement was entered into by plaintiff, the Maryland State Board of Education and the State's Developmental Disabilities Administration ("DDA"). The DDA therein agreed to enter into a contract with defendant KKI to provide residential services to plaintiff. From February of 1993 through March of 1996, Jake lived in three different group homes owned and operated by defendant KKI. These homes were licensed by the Maryland Department of Health and Mental Hygiene and were subject to state regulation. Funds for Jake's care were provided to KKI by the State.[5] A portion of those funds was supplied by the federal government pursuant to the federal Medicare Waiver program.

On or about June 16, 1993, Jake suffered blistering of both feet resulting from second degree burns when a KKI employee bathed him in scalding hot water. He was taken to the emergency room at Good Samaritan Hospital and then to Francis Scott Key Burn Center, where he was treated and kept overnight for observation.

On or about October 25, 1994, a KKI employee left Jake unattended and unmonitored near a flight of stairs. He had a propensity to entwine his arms with the bannister railings of stairs, and on this occasion, he entwined his arms and fell causing a compound fracture of his left arm. Once again, he was hospitalized, treated for multiple fractures, and released after his arm was placed in a cast.

On or about January 15, 1996, Jake again suffered scald wounds, on this occasion to his upper chest, chin and shoulder, and to his abdomen, genitals and thighs. He was admitted to Johns Hopkins Bayview Hospital where he was kept overnight and treated.

Jake was unable to control his urinary and bowel functions and required constant supervision in the use of KKI's toilet facilities. The behavior program developed for Jake required that he should be wearing adult diapers only during the night or when traveling to appointments or to work. However, KKI's staff members on numerous occasions left him in wet, soiled adult diapers during the day and did not properly take him to toilet facilities when he indicated a need to urinate or defecate.

Besides breaking his arm in 1994, Jake, during the three years that he lived in KKI homes, received various other injuries, including bruises and cuts to different parts of his body. The causes of these injuries were for the most part unwitnessed and unexplained.

In March of 1996, defendant KKI notified the DDA that it would no longer provide services to plaintiff. Plaintiff was then transferred to a community home operated by Creative Options. This civil action was filed in this Court on June 11, 1996.

## II

### *The Claims*

The third amended complaint contains twelve counts as follows:

---

3. Because plaintiff is the non-movant here, the facts summarized below, where disputed, reflect plaintiff's version of the events to the extent that it is supported by affidavits, depositions or documentary evidence. *Magnuson v. Peak Technical Services., Inc.,* 808 F.Supp. 500, 504 (E.D.Va. 1992).

4. Jake suffers from congenital mental retardation, a permanent condition.

5. KKI also contributed to the cost of Jake's care.

| | |
|---|---|
| Count I | Breach of Contract; |
| Count II | Negligent Scalding—June 16, 1993; |
| Count III | Negligent Injury—Broken Arm; |
| Count IV | Negligent Scalding—January 15, 1996; |
| Count V | Negligent Failure to Train and Supervise Staff; |
| Count VI | Negligent Retention; |
| Count VII | Violation of Constitutional Rights; |
| Count VIII | Violations of Water Temperature Regulations; |
| Count IX | Violation of Abuse and Neglect Regulations; |
| Count X | Violations of Staff Training Regulations; |
| Count XI | Violation of Individual Program Regulations; |
| Count XII | Violation of Nutritional Regulations |

Counts I through VI are asserted under state law. Counts VII through XII are based on 42 U.S.C. § 1983. In Count VII, plaintiff contends that, while he was under defendant's care, KKI deprived him of his substantive due process right to conditions of reasonable care and safe surroundings and conditions. It is asserted by plaintiff that defendant KKI owed him a substantive due process duty to provide safe conditions, insure bodily integrity, and provide adequate food, shelter, clothing, medical services and habilitation services. Counts VIII through XII are based on violations of federal rights allegedly established by 42 U.S.C. § 1396, *et seq.*, and by regulations implementing those statutory provisions.

Defendant KKI seeks summary judgment as to all of plaintiff's federal claims and further contends that this Court should dismiss plaintiff's pendent state law claims. According to defendant KKI, this Court should enter judgment as a matter of law in its favor (1) because plaintiff cannot demonstrate that defendant KKI deprived him of a right secured by the Constitution; (2) because defendant KKI did not act under color of law as required by § 1983; and (3) because plaintiff cannot demonstrate as alleged in Counts VIII—XII that defendant deprived him of a right secured by federal law.

## III

### *Summary Judgment Principles*

The principles to be applied by this Court in considering a motion for summary judgment filed under Rule 56, F.R.Civ.P. are well established. A party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that

it is entitled to judgment as a matter of law. Rule 56(c).

In *Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.*, 381 F.2d 245, 249 (4th Cir.1967), the Fourth Circuit Court of Appeals summarized these principles as follows: "It is well settled that summary judgment should not be granted unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." *Id.* Hence, the party opposing a motion for summary judgment is entitled to all favorable inferences which can be drawn from the evidence. *See, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Cram v. Sun Ins. Office, Ltd.*, 375 F.2d 670, 674 (4th Cir. 1967).

The burden is on the party moving for summary judgment to demonstrate clearly that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir.1984). This burden is met by consideration of affidavits, exhibits, depositions and other discovery materials. *Id.* Nevertheless, "[the facts, and the inferences to be drawn from the facts, must be viewed in the light most favorable to the party opposing the motion." *Ballinger v. North Carolina Agricultural Extension Serv.*, 815 F.2d 1001, 1004–05 (4th Cir.1987) (Timbers, J.), *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987) (citing *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985)).

Applying these principles to the facts of record here, this Court has concluded that defendant's motion for summary judgment must be granted in part and denied in part.

## IV

### *Prior Rulings*

Shortly after defendant was served with process in this case, it filed a motion to dismiss the complaint. In its Memorandum and Order of September 11, 1996, this Court denied that motion and directed defendant to file an answer. Relying on *Youngberg v.*

*Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Court in its ruling concluded that plaintiff had properly alleged facts in support of his § 1983 claim which would entitle him to the relief sought. (Slip op. at 7). The Court rejected defendant's contention that the complaint should be dismissed because plaintiff had failed to arbitrate his claims in the manner required by the Maryland Health Care Malpractice Claims Act. (Slip op. at 9–10).

Thereafter, plaintiff filed an amended complaint adding certain federal claims. Defendant once again filed a motion to dismiss contending, *inter alia,* that this Court lacked subject matter jurisdiction over plaintiff's federal claims and also over the pendent state law claims. Defendant contended, *inter alia,* that plaintiff had failed to allege a viable cause of action under § 1983 and that plaintiff had no constitutionally protected right because he had been voluntarily admitted to KKI's group homes. In its Memorandum and Order of June 23, 1997, this Court concluded that defendant's motion to dismiss the amended complaint should be granted in part and denied in part, with leave to plaintiff to file a second amended complaint. Defendant's motion to dismiss the amended complaint was denied as to Counts I through VI of the amended complaint, except that plaintiff's claims for punitive damages were dismissed. The motion was granted as to Count VII, with leave to plaintiff to file a second amended complaint. The Order entered by the Court denied defendant's motion to dismiss all of plaintiff's substantive due process claims, granted defendant's motion to dismiss plaintiff's § 1983 claim based on 42 U.S.C. § 1396, *et. seq.* and 42 U.S.C. § 6009, and also dismissed plaintiff's § 1983 claims based on the Maryland Developmental Disabilities Act.

In support of its motion to dismiss the amended complaint, defendant had relied primarily on the Supreme Court's decision in *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). In its Memorandum and Order of June 23, 1997, this Court concluded that the substantive due process claims asserted by plaintiff in this case under § 1983 were not as a matter of law foreclosed by *DeShaney* merely because, as claimed by defendant, Jake had been voluntarily committed to KKI's group homes. (Slip op. at 13). In ruling on defendant's motion, this Court noted that discovery had not at the time been completed in the case, and the Court declined to treat defendant's motion to dismiss as a motion for summary judgment because inquiry into the facts of the case was necessary to clarify the application of the legal principles. (Slip op. at 7, 13).

Thereafter, plaintiff filed a second amended complaint and more recently a third amended complaint. It is the latter pleading which has presented the claims challenged by defendant in the pending motion for summary judgment.

## V

### Applicable Principles

■ To prevail in a case asserting a claim under 42 U.S.C. § 1983, a plaintiff must show first that he was deprived of a right secured by the Constitution or laws of the United States and second that the deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). In here seeking summary judgment, defendant KKI contends that plaintiff has not satisfied either one of those requirements.

In Count VII of the third amended complaint, plaintiff asserts that defendant KKI had an affirmative duty imposed by the due process clause for his care and well-being, including a duty to provide reasonable care and safety. According to plaintiff, this duty included the substantive due process duty to provide safe conditions, insure bodily integrity, provide adequate food, shelter, clothing, medical services, and habilitation services.

In *Youngberg,* the United States Supreme Court held that persons who are involuntarily committed to state institutions have constitutionally protected liberty interests under the due process clause of the Fourteenth Amendment "in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests." 457 U.S. at

324. Moreover, the Court determined that states have "a duty to provide adequate food, shelter, clothing and medical care...[and] ... [have] ... the unquestioned duty to provide reasonable safety for all residents and personnel within the institution." *Id.*

In *Society for Good Will to Retarded Children, Inc. v. Cuomo,* 737 F.2d 1239 (2d Cir. 1984), the Second Circuit applied the *Youngberg* principles to a case involving the due process rights of residents of a mental institution. The Second Circuit held, *inter alia,* that, because of insufficient supervision by the state institution to prevent residents from injuring themselves and because of safety hazards, defendants had violated their constitutional duty to provide safe conditions. *Id.* at 1246. The Court concluded that even considering the professional judgment standard articulated in *Youngberg,* there was sufficient evidence produced at the trial in the district court to support a finding of a violation of the plaintiffs' substantive due process right to safe conditions. *Id.* at 1246–47.

## VI

### *Deprivation of a Constitutional Right*

Defendant KKI first argues that plaintiff's evidence fails to meet the legal standards necessary to prove that there was a deprivation of liberty under the due process clause. Relying on evidence of record here, including the report of its expert Dr. Travis Thompson, a psychologist, defendant contends that there is no proof that it acted with deliberate indifference in violating Jake's due process rights and in causing the injuries claimed to have been sustained by Jake.

■ Following its review of the record here, this Court concludes that the question of whether KKI extended to plaintiff conditions of reasonable care and safety cannot be determined as a matter of law at this stage of the case. When viewed in a light favorable to the plaintiff, the evidence produced by him is sufficient to permit plaintiff to present to the jury his claim that his constitutionally protected liberty interests have been violated by defendant's failure to provide him with conditions of reasonable care and safety. Complex principles of law are involved in this

case, and the Fourth Circuit has indicated that summary judgment should not be granted if inquiry into the facts is desirable to clarify the application of the law. *See Podberesky v. Kirwan,* 38 F.3d 147, 156 (4th Cir.1994) (quoting *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir. 1950)); *see also Kirkpatrick v. Consol. Underwriters,* 227 F.2d 228 (4th Cir.1955).

Defendant's principal contention is that plaintiff has failed to present proper expert testimony in this case sufficient to meet the *Youngberg* "professional judgment" standard. However, the question presented initially to the Court by defendant's motion is whether evidence exists indicating as a matter of law that KKI has satisfied its obligation to provide conditions of reasonable care and safety. In *Youngberg,* the Supreme Court distinguished between a state's duty to provide proper care and reasonable safety for a resident within a state institution and its duty to restrain residents and provide needed training. 457 U.S. at 324. In the latter instance, professional judgment must be exercised. *Id.* In the former, "day-to-day decisions regarding care... necessarily will be made in many instances by employees without formal training but who are subject to the supervision of qualified persons." *Id.* at 323 n. 30.

■ Thus, evidence of professional judgment is not required to prove that KKI acted unreasonably in caring for Jake and in preventing him from injuring himself. There is evidence in the record here that employees of KKI bathed him on two separate occasions in water temperature exceeding 110 degrees and that as a result Jake sustained scald injuries which required hospitalization. There is also evidence that inadequate supervision of Jake by a KKI employee resulted in Jake's falling and injuring himself. Evidence of insufficient supervision may properly be found to support a finding of a violation of the right of a mentally retarded plaintiff to safe conditions. *Cuomo,* 737 F.2d at 1246. Moreover, there is evidence in the record that personnel of KKI were improperly trained and supervised. Under *Monell v. Dept. of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611

(1978) as interpreted by *Spell v. McDaniel,* 824 F.2d 1380, 1389 (4th Cir.1987), evidence of inadequate training and supervision may support a § 1983 claim of a constitutional violation asserted against a state actor. *See Powell v. Shopco Laurel Co.,* 678 F.2d 504, 506 (4th Cir.1982). The evidence mentioned hereinabove and other facts of record support plaintiff's claim that defendant KKI acted with deliberate indifference in denying him his constitutional right to be provided with conditions of reasonable care and safety.

In arguing that the damages claimed by plaintiff in this case were not caused by its acts, defendant KKI relies on evidence in the record of Jake's violent behavior and of his self injurious conduct. Indeed, Jake had been placed in twenty-four hour restraints at Rosewood during a two year period to prevent him from injuring himself or others. While under the care of KKI, Jake displayed frequent aggressive behavior, characterized by Dr. Thompson as "sometimes very severe and dangerous aggression." Because of Jake's destruction of property and assaultive behavior at the Morven Road home operated by KKI, the landlord terminated the lease at that location, and Jake was removed to another KKI home. Defendant contends that KKI's sophisticated techniques improved Jake's behavior and that KKI's conduct at all times constituted reasonable care for this severely retarded individual.

These facts, however, are not conclusive. It will be for the jury to consider both plaintiff's evidence and defendant's evidence and determine whether KKI afforded Jake conditions of reasonable care and safety. As to this issue, there are genuine issues of material fact which cannot be decided by way of a motion for summary judgment.

[6] Defendant further argues that *Youngberg* principles apply only to involuntarily committed mental patients. This issue likewise cannot be determined on the record here as a matter of law. Evidence exists

indicating that the custodial status of Jake was involuntary and that he was not free to leave KKI's home at any time, as argued by defendant. Concededly, Jake was being held by the State in custody at Rosewood against his will. There is evidence indicating that it was action taken by the State which transferred Jake to KKI's custody and that his prior involuntary status thus continued.

Defendant argues that it had no authority to restrain Jake's liberty while he was residing in one of its homes and that Lillian Brown had the contractual right to remove Jake at any time. But it was not until February 1, 1995 that an order was entered by the Circuit Court of Baltimore City appointing Lillian Brown guardian of the person and property of Jake Brown. It is specious to suggest that Jake, who is severely mentally retarded, could walk out of a KKI home on his own at any time. Moreover, even if Jake could be considered to be technically a "voluntary" resident of KKI's homes, the jury could reasonably find from the evidence that because of his incompetence, he was a "de facto involuntary" resident. *See Lojuk v. Quandt,* 706 F.2d 1456, 1466 (7th Cir.1983); *Clark v. Donahue,* 885 F.Supp. 1159, 1162 (S.D.Ind.1995). As this Court previously held in its Memorandum and Order of June 23, 1997, the Supreme Court's decision in *DeShaney* does not prohibit the application of *Youngberg* principles under circumstances like those present in this case. (Slip op. at 9–13). *See Buffington v. Baltimore County,* 913 F.2d 113, 119 (4th Cir. 1990), *cert. denied,* 499 U.S. 906, 111 S.Ct. 1106, 113 L.Ed.2d 216 (1991).

For these reasons, this Court concludes that defendant is not entitled to the entry of summary judgment on the ground that plaintiff has failed to produce evidence of the deprivation of a constitutional right.[6]

## VII

### *Under Color of State Law*

Defendant KKI next argues that the evidence relied upon by plaintiff fails to estab-

---

6. Plaintiff has also asserted in Count VII of the third amended complaint that defendant KKI had a substantive due process duty under § 1983 to provide adequate food, shelter, clothing, medical services and habilitation services. These claims are only peripherally related to the princi-

pal issue presented, namely whether KKI denied plaintiff reasonable conditions of care and safety. Whether evidence in support of these other claims may be presented to the jury at the trial of this case will be determined by the Court at a later date.

lish that any deprivation of plaintiff's liberty was the result of state action. Defendant asserts that KKI is a private non-profit corporation which is managed and operated by private individuals and that its employees are not employed by the State of Maryland or any other governmental entity.

■ The "under color of state law" element of a claim asserted under § 1983 requires that "the conduct allegedly causing the deprivation of [the plaintiff's rights] be fairly attributable to the state." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Although the Supreme Court has articulated a number of different factors or tests for applying the "under color of state law" requirement in different contexts, it has not adopted a succinct test applicable to all situations. *Conner v. Donnelly,* 42 F.3d 220, 223 (4th Cir.1994). As noted in *Conner,* the Fourth Circuit has identified three situations in which particular conduct by a private entity constitutes "state action," as follows:

> First, a private party that is regulated by the state acts under color of state law where there is a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Blum,* 457 U.S. at 1004, 102 S.Ct. at 2786 (citing *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351 95 S.Ct. 449, 452, 42 L.Ed.2d 477 (1974)). Second, a private party acts under color of state law where the state, through extensive regulation of the private party, has exercised coercive power or has provided such significant encouragement that the action must in law be deemed to be that of the state. *Id.* at 1004, 102 S.Ct. at 2786. Finally, a private party acts under color of state law where "the private entity has exercised powers that are 'traditionally the exclusive prerogative of the state.'" *Id.* at 1005, 102 S.Ct. at 2786 (citing *Jackson,* 419 U.S. at 353, 95 S.Ct. at 455).

*Id.* at 224.

■ Whether a private entity is a state actor for purposes of determining if it may be sued under § 1983 is a "necessarily fact-bound inquiry." *Lugar,* 457 U.S. at 939. In *Haavistola v. Community Fire Co. Of Rising Sun, Inc.,* 6 F.3d 211, 218 (4th Cir.1993), the Fourth Circuit observed that this determination requires a "factually intense analysis," the outcome of which "hinges on how a given state views the conduct of the function by the private entity."

■ In opposing defendant's motion for summary judgment, plaintiff contends, *inter alia,* that the challenged conduct of defendant KKI in this case was undertaken pursuant to delegated state authority and that KKI was a state actor because it exercised powers which are traditionally the exclusive prerogative of the State of Maryland. Following its review of the record here, this Court would agree that disputes of material facts exist in this case concerning whether defendant KKI at the time of the matters in suit was a state actor.

The Fourth Circuit's opinion in *Conner* is instructive. In that case, a prisoner brought a § 1983 suit against a private physician alleging that the physician had violated his Eighth Amendment rights. 42 F.3d at 222. The Fourth Circuit rejected defendant's contention that he was not a state actor and therefore could not be sued under § 1983. *Id.* At 225–26. Relying on the Supreme Court's decision in *West,* the Court held that, whether or not the defendant physician was employed by the state, any physician authorized by the state to provide medical care to a prisoner exercises power that is traditionally the exclusive prerogative of the state. *Id.* at 225. Noting that the state bears an affirmative obligation to provide medical care to its inmates, the Court held that a private physician acts under color of state law when the state delegates such duty to a physician who voluntarily assumes that obligation. *Id.* at 226.

Similarly in this case, the State of Maryland had a duty under *Youngberg* to provide an involuntarily committed person like Jake with conditions of reasonable care and safety. In this case, there is evidence that the State has delegated that constitutional duty to defendant KKI, and that KKI has voluntarily assumed the State's obligation. Once Jake

was in the custody of defendant KKI, defendant was exercising delegated powers which were traditionally the exclusive prerogative of the state. In exercising such powers, defendant was a state actor subject to suit under § 1983. *See West,* 487 U.S. at 55–57; *National Collegiate Athletic Ass'n. v. Tarkanian,* 488 U.S. 179, 192, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988); *Lombard v. Eunice Kennedy Shriver Ctr.,* 556 F.Supp. 677, 679 (D.Mass.1983). From its review of the record in this case, this Court is satisfied that there is evidence in the record here that injuries sustained by Jake were caused by conduct of a state actor.[7]

The Court has accordingly concluded that the issue of whether defendant was at the time of the matters in suit acting under color of state law cannot be determined at this stage of the case by way of a motion for summary judgment. Since disputed questions of fact exist, defendant is not entitled to summary judgment under Count VII on the ground that defendant was not a state actor.

## VIII

### *Counts VIII–XII*

■ The claims asserted by plaintiff in Counts VIII–XII of the third amended complaint are based on alleged violations by defendant KKI of federal rights. 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges or immunities secured by the Constitution *and laws.*" (Emphasis added). This provision may be relied upon by a plaintiff to redress violations of federal rights secured by federal law as well as violations of state rights. *Maine v. Thiboutot,* 448 U.S. 1, 8, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).

■ In Count VII of his earlier amended complaint, plaintiff had asserted § 1983 claims for alleged violations by KKI of his rights under Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et seq.* ("Title XIX"), and under numerous Title XIX implementing regulations, 42 C.F.R. §§ 441.402, 441.404, 442.1 et seq., 483.410, 483.420, 483.430, 483.440, 483.470 and 483.480.[8] That Count was dismissed by the Court in its Memorandum and Order of June 23, 1997, because of a lack of specificity, (slip op. at 19), with leave granted to plaintiff to file an amended pleading. Plaintiff was directed to comply with Rule 10(b), F.R.Civ.P. and specify in separate counts each specific federal right claimed to be enforceable under § 1983. As the Supreme Court noted in *Blessing v. Freestone,* 520 U.S. 329, 117 S.Ct. 1353, 1360, 137 L.Ed.2d 569 (1997), it is only when "the complaint is broken down into manageable, analytical bites" that a court can "ascertain whether each separate claim satisfies" criteria for determining whether a federal statute created an enforceable right under § 1983. *Id.*

Plaintiff has attempted to comply with these requirements by way of the allegations contained in Counts VIII–XII of the third amended complaint. However, the theory advanced by plaintiff in support of the claims asserted in those counts is strained and convoluted. On the record here, this Court concludes that plaintiff has failed in each of Counts VII–XII to satisfy the requirement that there must be evidence that a federal right has been violated before liability may be imposed on a state actor under *Thiboutot.*

■ As indicated by the Supreme Court in *Blessing,* the plaintiff here must show that there has been a violation of a federal right, rather than merely a violation of federal law. 117 S.Ct. at 1359. In each of Counts VIII–XII, plaintiff relies on standards of state law

---

**7.** Plaintiff also argues that KKI was a state actor because there was a sufficiently close nexus between the State and the challenged action of KKI so that such action might fairly be treated as that of the State itself. Because this Court has concluded that there is evidence that KKI was exercising delegated powers which were traditionally the exclusive prerogative of the State of Maryland, there is no need to address this alternative argument of plaintiff.

**8.** In a memorandum filed at an earlier stage of this case, plaintiff conceded that the federal regulations cited in his second amended complaint were not the ones which governed Jake's case. *See* Memorandum in Support of Plaintiff's Motion for Leave to Amend the Complaint, filed on October 3, 1997, at 3.

codified in various sections of Code of Maryland Regulations ("COMAR"). According to plaintiff, he is not asserting a § 1983 claim for a violation of these regulations but rather for a violation of 42 U.S.C. § 1396 and its accompanying federal regulations. Plaintiff maintains that KKI was required to comply with the terms of the Medicaid Waiver Program to receive federal funding, that Maryland's regulations governing home and community based services provide the necessary framework for the operation of KKI's homes, and that Maryland's regulations may therefore be relied upon by plaintiff in proving that there has not been compliance with federal regulations which must be met as a condition for funding. Plaintiff thus argues that, since KKI violated various provisions of COMAR, there has been a violation of federal rights established by § 1396 and its accompanying regulations. In Counts VIII–XII, plaintiff relies specifically on violations of water temperature regulations, abuse and neglect regulations, staff training regulations, individual program regulations and nutritional regulations.

■■■■ When the theory espoused here by plaintiff is applied to the allegations of each of Counts VIII through XII inclusive, this Court concludes that plaintiff is seeking a recovery in those Counts for violations of state law rather than for violations of a federal right. A violation of state law cannot provide the basis for a claim asserted under § 1983. *White v. Chambliss,* 112 F.3d 731, 738 (4th Cir.1997); *Weller v. Dept. of Soc. Serv. for Baltimore,* 901 F.2d 387, 392 (4th Cir.1990). Moreover, § 1983 speaks in terms of "rights, privileges or immunities" and not in terms of a violation of federal law. *Wilder v. Virginia Hosp. Ass'n.,* 496 U.S. 498, 509, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). Section 1983 is not available to enforce a violation of a federal statute where the statute did not create an enforceable federal right within the meaning of § 1983. *Suter v. Artist M.,* 503 U.S. 347, 355–56, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992) (quoting *Wright v. Roanoke Redevelopment and Housing Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987)).

■■■ It is plaintiff's contention that a violation of the cited state regulations implicates federal law because those state regulations have been incorporated in the federal law and made mandatory upon providers of home and community based services like KKI. This Court concludes that there is no merit to the attenuated arguments advanced by plaintiff in support of the claims asserted in Counts VIII–XII of the third amended complaint. One of the factors to be considered by a court in determining whether a particular statutory provision gives rise to a federal right is whether the plaintiff's interest is "vague and amorphous." *Blessing,* 117 S.Ct. at 1359. This Court concludes that the interests asserted by plaintiff which are based on a federal statute and regulations purportedly incorporating state regulations are too vague and amorphous and not sufficiently concrete to be enforced by the Court on the record here. *See Wilder,* 496 U.S. at 509. Plaintiff has not in any one of the five Counts at issue met his burden of showing that a federal right has been infringed by defendant KKI.

For these reasons, defendant's motion for summary judgment will be granted as to Counts VIII–XII of the third amended complaint.

### IX

#### *Conclusion*

For all the reasons stated, plaintiff will be permitted to present to the jury the § 1983 claims asserted by him in Count VII of the third amended complaint. Since federal jurisdiction exists in this case, plaintiff may also go forward with his pendent state law claims asserted in Counts I–VI. However, judgment will be entered in favor of defendant as to Counts VIII–XII.

Accordingly, it is this 20th day of January, 1998 by the United States District Court for the District of Maryland,

ORDERED:

1. That defendant's motion for summary judgment is hereby granted in part and denied in part;

2. That defendant's motion for summary judgment is hereby denied as to Count VII of the third amended complaint;

3. That defendant's motion for summary judgment is hereby denied as to Counts I, II, III, IV, V and VI of the third amended complaint; and

4. That defendant's motion for summary judgment is hereby granted as to Counts VIII, IX, X, XI and XII of the third amended complaint.